Joan GODLOVE, Plaintiff–Appellant,

v.

BAMBERGER, FOREMAN, OSWALD, AND HAHN, a general partnership, et al., Defendants–Appellees.

No. 89-2722.

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1990.

Decided June 6, 1990.

Joan Godlove, Tulsa, Okl. and Robert S. Abdalian, New Orleans, La., for plaintiff-appellant.

D. Reed Scism and Kenneth J. Yerkes, Barnes & Thornburg, Indianapolis, Ind., for defendants-appellees.

Before WOOD, Jr., EASTERBROOK, and KANNE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

There is an old adage that "one who is his own lawyer has a fool for a client." [1] So it is in this case even though plaintiff, Joan Godlove, is a summa cum laude graduate of the Indiana University School of Law, and a member of the bar. This lawyer should have declined to represent this client.

Plaintiff was hired as an attorney by the defendant law firm, Bamberger, Foreman, Oswald & Hahn, in January 1981 and fired in July 1983. In June 1985, she brought this *pro se* action against her former firm and certain named partners alleging on eight different grounds that her dismissal was unjust. The defendant law firm wisely took heed of the adage and secured outside legal assistance.

I.  CASE HISTORY

There is no need to set forth all the pretrial exercises detailed in the record which is a foot and a half high, but some

1. *Faretta v. California,* 422 U.S. 806, 852, 95 S.Ct. 2525, 2549, 45 L.Ed.2d 562 (1975) (Blackmun, J., dissenting).

background is necessary.[2] Plaintiff began this diversity action in June 1985 with a fifty-three page complaint. The district court dismissed the complaint, characterizing it as a "lengthy meandering" statement of facts, with much "irrelevant material" and "bordering on being scandalous." In granting leave to file an amended complaint, the court made clear what is expected in a complaint. The amended complaint was also fifty-three pages long. The court let it stand, but our comparison of the two complaints evidences little regard for the court's advice and the customary requirement for "a short and plain statement of the claim...." Fed.R.Civ.P. 8(a).[3] In December 1986 the court dismissed with prejudice Counts I, II, IV, and V of the amended complaint for failure to state a claim upon which relief could be granted. Fed.R. Civ.P. 12(b)(6). The other counts, III, VI, VII, and VIII remained. In July 1989 the district court, upon the second application by defendants for sanctions under Fed.R. Civ.P. 37, dismissed "this cause of action" with prejudice at plaintiff's costs. Plaintiff raises on appeal the 12(b)(6) dismissal of Counts II and V (Counts I and IV are abandoned), and the rule 37 dismissal of the cause of action.

Although we view the appeal of the 12(b)(6) dismissals to be without merit, we need only consider the rule 37 dismissal sanction for which purpose the district judge considered the whole record and particularly the discovery difficulties. That sanction took with it Counts II and V whether they had been properly dismissed previously under 12(b)(6) or not. The district court found that each step of the discovery process had been a "monumental exercise" in briefs, motions, and extensions of time, and concluded that plaintiff had "willfully and deliberately" ignored and refused to obey the orders of the court. We

must look briefly at some of the events that led to the district court's conclusion. A mere outlining of a portion of the record will serve to justify the dismissal.

February 5, 1987—Defendants served on plaintiff their first request for production of documents containing twelve particular items. Plaintiff received an agreed extension of time and then objected to all the items sought. In September 1987, the district court found one of plaintiff's "wholesale" objections to be "specious" and that the others "bordered on being frivolous."

June 12, 1987—After the parties failed to resolve their document production problems, defendants filed a motion to compel production.

June 14, 1987—Plaintiff served on defendants a response offering to produce some of the documents requested but only on condition that defendants' counsel furnish her a statement "indicating that his client would furnish plaintiff with documents she wanted."

September 3, 1987—After receiving additional extensions of time plaintiff filed her brief in opposition to defendants' motion to compel production.

September 28, 1987—The district court overruled all of plaintiff's objections except two, a claim of attorney-client privilege and a work product objection. The district court ordered plaintiff to submit to the court for in camera examination those documents she claimed were protected by the attorney-client privilege. The court also ordered plaintiff to submit to the court and defendants' counsel a list of the claimed work product items, identifying them in sufficient detail to enable the court to rule on that objection. The district court also commented that

---

**2.** We accept plaintiff's figures that there are over three-hundred pleadings and orders in the record.

**3.** The amended complaint alleged the following claims:
I. Breach of Employment Contract; II. Unjust Dismissal in Retaliation for the Exercise of Protected Activities; III. Violation of the

Equal Pay Act (29 U.S.C. § 206(d)(1)); IV. Interference with Contractual Relations; V. Violation of the Indiana Service Letter Statute (Ind.Code § 22–6–3–1); VI. Violation of the Indiana Blacklisting Statute (Ind.Code § 22–5–3–1); VII. Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.); and VIII. State Common Law Claim for Interference with Prospective Advantage.

plaintiff appeared to completely misapprehend discovery.

October 26, 1987—Plaintiff responded to the district court's September 28 order by letter in which she informed the court she was refusing to submit any material for in camera inspection and was claiming as work product items only those notes she had made in anticipation of litigation.

November 4, 1987—The district court ordered that plaintiff's second set of interrogatories be stricken and that she pay defendants' fees and costs related to the interrogatories because of their number, the irrelevance of many of them, and because they went beyond the scope of reasonable discovery contemplated by the rules. The court subsequently held a hearing on the amount of the fees and costs, but plaintiff advised the court she would not pay the expenses pending the outcome of a final appeal in the case.

November 23, 1987—Plaintiff served her "Plaintiff's Post–Ruling Response to Defendant's First Request for Production of Documents." In that pleading she ignored some of defendants' requests, partially responded to one request, and again raised her prior objections.

December 8, 1987—Defendants applied for rule 37 assistance because of plaintiff's failure to comply with certain of the requests as ordered by the district court.

December 23, 1987—The court issued an order responding to the defendants' rule 37 sanction request. The district court expressed its difficulty in believing that plaintiff would deliberately ignore the court's prior order but excused plaintiff on the assumption that her refusal to comply resulted from some type of misunderstanding. The court then specifically and plainly directed plaintiff to respond to the various requests within certain time limits. Failure to do so, the court warned, would result in the court's proceeding to consideration of the rule 37 relief sought by defendants.

December 24, 1987—After defendants' attempts to arrange plaintiff's deposition had failed, the district court issued an order scheduling plaintiff's deposition for January 21, 1988. Plaintiff failed to appear after giving notice to opposing counsel only that morning. There were further difficulties before defendants were finally able to take her deposition.

February 3, 1988—After plaintiff failed to comply with the December 1987 order, defendants filed their "Request that Court Proceed on Defendants' Request for Rule 37 Relief."

March 3, 1988—The district court wrote plaintiff, noting her disregard of its orders and advising her that unless she responded to the orders immediately, the court would rule on defendants' application for rule 37 relief.

December 21, 1988—the district court struck a number of plaintiff's 180 requests for admissions by defendants, commenting in its order that plaintiff's requests were prolix, argumentative, and appeared to be aimed more at harassing and embarrassing the individuals to whom the requests were directed than at simplifying the issues.

March 31, 1989—Defendants reported that plaintiff had still not complied, and the court suggested defendants file a current application for rule 37 relief.

April 14, 1989—Defendants filed their second application for rule 37 relief specifically seeking dismissal with prejudice and their costs.

June 14, 1989—Briefing on the second application was completed.

July 7, 1989—After considering the procedural history of the case, the district court issued its order as a rule 37 sanction dismissing plaintiff's cause of action with prejudice.

In addition to the problems outlined above, the record reveals that plaintiff also resisted various orders of the court by moving to reconsider and vacate about a half-dozen of those orders. One order plaintiff sought to vacate was a denial of her request that defendant firm be required to notify its clients of her cause of action and her assertion in behalf of defendants' clients of the attorney-client privi-

lege and work product doctrine. That effort of hers was unsuccessful. Plaintiff also filed two interlocutory appeals, both of which this court dismissed on its own motions. In one appeal, plaintiff sought to require all the district judges in Indiana who had disqualified themselves to give the reasons for their disqualifications. In the other, plaintiff expressed her dissatisfaction with not getting an extension of time to file a brief on the work product issue.

## II. ANALYSIS

After considering that brief outline of the procedural history and plaintiff's conduct of her own case little more should be needed to justify what a very patient trial judge, experienced on both the state and federal benches, felt compelled to do. Plaintiff left him no alternative but to dismiss her suit. Plaintiff's recalcitrance and obstruction of the case she initiated cannot be tolerated particularly from one who should know better.

■ For this appeal plaintiff did secure counsel who well represented his client in a difficult situation. Plaintiff's counsel sets forth the basic sanction law.[4] Whether to sanction and the sanction to be imposed are decisions entrusted to the discretion of the district court, *Patterson v. Coca–Cola Bottling Co.*, 852 F.2d 280, 283 (7th Cir.1988) (per curiam). The "discretion given to the district court is broad," *Tamari v. Bache & Co.*, 729 F.2d 469, 472 (7th Cir.1984). That discretion, however, "is not unfettered." *Schilling v. Walworth County Park & Planning Comm'n*, 805 F.2d 272, 275 (7th Cir.1986). The sanction must be "just" and specifically related to the particular claim at issue in the discovery order. *Insurance Corp. of Ireland, Ltd., v. Compagnie des Bauxites*, 456 U.S. 694, 707, 102 S.Ct. 2099, 2106, 72 L.Ed.2d 492 (1984). It must also be remembered that unexcused and willful violations justify harsh sanctions up to and including dismissal with prejudice. *National Hockey League v. Metropolitan Hockey Club, Inc.*,

427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam). It is plaintiff's position against that legal backdrop, though it is conceded that she failed to comply with the court's discovery orders, that the most severe sanction—the "draconian sanction of dismissal"—was not justified. We view the district court's decision to impose rule 37 sanctions under an abuse of discretion standard. *Magnus Elec. v. Masco Corp.*, 871 F.2d 626, 631 (7th Cir. 1989).

To support that position plaintiff raises several arguments. It is implied in plaintiff's briefs that since her trial court actions were *pro se* that circumstance should be considered. Ordinarily, we treat the efforts of *pro se* applicants gently, but a *pro se* lawyer is entitled to no special consideration.

■ Plaintiff argues that her refusal to comply with the discovery orders was "not made in a fit of intransigence," but resulted from her "heartfelt belief" that her compliance would violate duties imposed on her by the *Rules of Professional Conduct* governing members of the Indiana bar and would result in a waiver of the work product doctrine and the attorney-client privilege. Plaintiff undertook to make those decisions for the court. She refused to afford the court the ordered opportunity for *in camera* examination or to submit a list of what she claimed were work product materials. Plaintiff need not further concern herself with those doctrines as for her they are no longer at risk. It was the district court, not plaintiff, that had the responsibility to make those discovery production determinations on the merits.

Plaintiff also complains she was sanctioned without benefit of a hearing. Plaintiff had ample opportunity to respond to the court's orders, and her refusals were clear. No other hearing was needed to go over once again the discovery impasse caused by plaintiff. Whether to hold a hearing before imposing sanctions is a mat-

---

**4.** Plaintiff observes that the underlying discovery orders, the disobeying of which give rise to a sanction, must themselves be correct, but plaintiff does not challenge the underlying discovery orders in this case.

ter of the sound discretion of the trial court. There was nothing left for the court to do at a formal hearing except waste more time of the court and defendants. There was no abuse of discretion. *Margoles v. Johnson,* 587 F.2d 885, 888–89 (7th Cir.1978). We decline plaintiff's invitation to revisit that decision.

Plaintiff had been amply warned about the increasing likelihood of sanctions. She should have foreseen the possibility of dismissal. In the second request for rule 37 relief filed on April 14, 1989, defendants specifically asked for dismissal with prejudice. Any last minute change of mind by plaintiff to partially comply, to the limited extent she saw fit, with the court's order was too little too late. Plaintiff can not dictate her own terms of compliance with the court's order. Plaintiff may compromise with the defendant but not with the court. Her inadequate last minute "compliance" attempt was properly rejected.

Plaintiff claims that the district court should have experimented with some lesser sanction before dismissal. Plaintiff overlooks that an earlier monetary sanction was imposed but she promptly notified the court she would not pay until after she had taken an appeal. The first sanction obviously had no curative impact on her. She continued to be obstructive. There is no reason to believe that some other sanction would have been effective in causing plaintiff to progress in an orderly fashion with this litigation. The district judge is not to be faulted now for his patient efforts with plaintiff, nor will we be drawn into quibbling about a phrase or two of the district judge taken out of context which plaintiff now claims misled her in some way to expect something less than dismissal.

After our own examination of the entire record, it would be impossible to come to any other conclusion than that plaintiff willfully and deliberately chose to ignore and refuse to obey the court's orders. *Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1957), limits sanctions to situations where the noncompliance is willful and not due to inability of the party to comply. We see nothing but willfulness in this record. Plaintiff does not dispute her noncompliance was deliberate. Her excuse is only that she knew better than the district judge what response she should make. The district court concluded that after more than eighteen months of intransigence, resistance, and disregard of court orders that no other sanction could be meaningful. We see no factual findings by the district court which could reasonably be considered clearly erroneous. *Hindmon v. National–Ben Franklin Life Ins. Corp.,* 677 F.2d 617, 621 (7th Cir.1982). The facts justifying dismissal are vividly apparent on the face of the record.

This court has recognized that the choice of sanctions is primarily the responsibility of the district judge, *Patterson,* 852 F.2d at 283. Sanctions are reviewed under a differential standard. No matter the standard of review, in this case, even under the strict de novo standard of review, we could not but approve the imposition of the dismissal sanction. *National Hockey League,* 427 U.S. at 640–41, 96 S.Ct. at 2779–80. The district court could have abused its discretion only in declining to impose the dismissal sanction with prejudice to bring an end to plaintiff's attempt to manipulate the progress of her case to suit herself. This is not a case as in our recent case of *Diehl v. H.J. Heinz Co.,* 901 F.2d 73 (7th Cir.1990) in which this court determined that the condition imposed by the district court was so unreasonable that it could not be complied with and therefore failure to comply did not justify sanctions.

The district court's decision under rule 37 to sanction plaintiff by dismissing her case with prejudice is affirmed. We remand to the district court for such further proceedings as may be necessary in relation to costs.

AFFIRMED.