Nelison ANDERSON, Harold Davis, David Cain, James Heflin, Ernest Vernon, and Jesse Reason, Plaintiffs–Appellants,

v.

**UNITED PARCEL SERVICE,**
Defendant–Appellee.

No. 89–3422.

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1990.

Decided Oct. 5, 1990.

MaNina M. Harper; Lewis Myers, Jr., James Childs, Jr., Childs, Myers & Willis; and Calvita J. Frederick, Chicago, Ill., for plaintiffs-appellants.

Steven H. Adelman, John A. McDonald, Carla J. Rozycki, and Linda R. Winter, Keck, Mahin & Cate, Chicago, Ill., for defendant-appellee.

Before WOOD, Jr., FLAUM and KANNE, Circuit Judges.

HARINGTON WOOD, Jr., Circuit Judge.

"Contumacious—perverse in resisting authority, stubbornly disobedient." [1] That is the word that the district judge used to describe the conduct of the plaintiffs and their attorneys. Because we cannot say that the district court abused its discretion in dismissing the plaintiffs' suit, we affirm.

The plaintiffs are "supervisors" at United Parcel Service, more commonly known as "UPS." The plaintiffs desire to become UPS "managers," but assert that the company has passed them over for promotion because of their race. At the district court, the parties hotly contested whether there was any real distinction between "managers" and "supervisors," an issue not relevant to our disposition of the appeal.

On December 19, 1987, two of the plaintiffs filed a complaint alleging racial discrimination in violation of 42 U.S.C. § 1981. Four more plaintiffs were added through an amended complaint on May 19, 1988. One of the four new plaintiffs had a slightly different theory of liability: he sued under Title VII for what he claimed was a racially motivated suspension from work.

After the filing of the complaint, this case has been marked by the plaintiffs' dilatory tactics. More often than not, the relationship between opposing counsel could be described as acrimonious; at one point, the plaintiffs' counsel even accused the defendant's counsel of racism. Having

---

**1.** WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY    497 (1981).

reviewed the record, it would be impossible for us to recapture the district court's frustrations with the plaintiffs in a short narrative, but we will try to hit the highlights.

To begin with, the plaintiffs' first set of interrogatory answers were due by June 13, 1988, and at a status hearing on June 22, 1988, they still had not answered. After a deadline for a second set of interrogatory answers came and went, UPS had to resort to a motion to compel discovery and was awarded $160 for its costs in bringing the motion.

Next on the agenda was the preparation of a pretrial order. The district court, on December 22, 1988, had ordered both parties to file a joint final pretrial order by February 17, 1989. A pretrial order, however, was prepared entirely by UPS, prompting the company to move for a dismissal on February 16, 1989, for failure to abide by pretrial procedures. The plaintiffs eventually tried to prepare their own pretrial order, but ignored the local court rules in the process. After the court and opposing counsel pointed out the deficiencies in the plaintiffs' pretrial order, the plaintiffs sought leave to file a revised version. It took a pretrial conference with the district court before the parties finally filed an agreed pretrial order on March 6, 1989—the date originally slated for trial. UPS's motion to dismiss continued under the court's advisement.

The parties began to enter into settlement discussions, but UPS found the negotiating difficult. The two attorneys for the various plaintiffs could not agree which of the plaintiffs they each represented. At a hearing attended by the plaintiffs themselves, the district court was able to straighten out the representation mess. The district court then admonished both of the plaintiffs' attorneys for their delays. After listening to a United States district judge lecture their chosen counsel on the necessity for promptness and cooperation, the individual plaintiffs should have been aware of the peril that further delay would bring.

Still, the problems continued. Because of the withdrawal of two plaintiffs, the severance for trial of the Title VII claim, two motions for summary judgment, and the Supreme Court's decision in *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), a revision was necessary to the previous pretrial order. The district court twice at the same hearing told the plaintiffs' counsel, "I want a new pretrial order done in accordance with the rules, initiated by you." The plaintiffs inventively interpreted this statement to mean that they could rely on their previous pretrial order and avoid filing a new one. Also, the plaintiffs held the risky belief, contrary to the district judge's conclusion, that a revised pretrial order was unnecessary. *See Godlove v. Bamberger, Foreman, Oswald & Hahn*, 903 F.2d 1145, 1149 (7th Cir.1990). At this time, UPS reiterated its motion that the plaintiffs' case be dismissed for failure to comply with pretrial procedures.

UPS had previously filed a motion for summary judgment with a supporting brief and statement of uncontested facts in compliance with local court rules. The plaintiffs then sought and received an extension of time to file their response, but the section 1981 plaintiffs still managed to miss the extended deadline by four days, with the Title VII plaintiff taking an additional eight days to respond. Neither the section 1981 plaintiffs' nor the Title VII plaintiff's response contained citations to the record, supporting materials, or a response to the statement of uncontested facts. On September 19, 1989, the district court gave the plaintiffs until September 22 to add appropriate references to the record.

On September 22, 1989, only the Title VII plaintiff complied with the district court's order, but even his amended response needed to be superseded five days later by a second amended response, filed without leave of the court. The section 1981 plaintiffs did not even attempt to file an amended response until September 28, 1989, at which time they merely filed excerpts of their answers to interrogatories and abstracts of depositions, without amending their memorandum to refer to these materials. At no time did the section 1981 plaintiffs or the Title VII plaintiff

comply with the local court rules by filing a response to UPS's statement of uncontested facts.

The district court then granted UPS's summary judgment motion but only as to the section 1981 plaintiffs and mainly on the strength of the Supreme Court's *Patterson* decision. For the Title VII plaintiff, the district court believed that his deposition testimony raised a triable issue of fact as to whether UPS acted with racial motivations in suspending him. As an alternative basis for dismissal for the section 1981 plaintiffs and as the sole grounds for dismissing the Title VII plaintiff, the district court relied on its supervisory powers, codified in FED.R.CIV.P. 16(f) & 37(b), to sanction parties for dilatory conduct. We need go no further than the district court's decision that the plaintiffs' contumacious conduct warranted dismissal of their action.

■ It is axiomatic that we review the district court's decision only for an abuse of discretion. *See, e.g., Godlove*, 903 F.2d at 1148; *Lowe v. City of E. Chicago*, 897 F.2d 272, 274 (7th Cir.1990); *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 655 (7th Cir.1989) (en banc). "Abuse of discretion" means something more than our belief that we would have acted differently if placed in the circumstance confronting the district judge. *See Tamari v. Bache & Co.*, 838 F.2d 904, 909 (7th Cir. 1988) ("[T]o disagree with the judge's action and to find that it was an abuse of discretion are two different things."). The district court's decision must strike us as fundamentally wrong for an abuse of discretion to occur.

■ In this case, we are sympathetic to the district court's plight. Lest a repeat of the precedent in *Jarndyce v. Jarndyce* occur, district courts sometimes need to prod litigants into action. Here, the district court tried to move this case along but instead was met by a series of delaying tactics by the plaintiffs. Whenever the plaintiffs did act, their inadequate motions and briefs only served to exacerbate the district court's frustrations. In the circumstances of this case, we cannot say that it

was an abuse of discretion for the district court to dismiss the plaintiffs' suit as a sanction for noncompliance with court rules and orders.

We have in the past affirmed dismissals or default judgments as a sanction for conduct similar to that of the plaintiffs. In *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058 (7th Cir.1989), a one-year delay in filing a pretrial order justified dismissal of the case. The plaintiffs distinguish *Pyramid Energy* by asserting that their failure to prepare a pretrial order did not cause as long of a delay, but this misses the point—factors other than the delay caused by the pretrial order contributed to the district court's decision to dismiss. *Pyramid Energy* is instructive as to the importance of a pretrial order and the possible consequences of its delay. In *Coleman v. Smith*, 814 F.2d 1142 (7th Cir. 1987), the defendants' attorneys failed to meet the terms of discovery deadlines and other pretrial orders, to participate in the preparation of a pretrial order, to produce evidence as properly requested by the plaintiff, or to file written statements for inclusion in the pretrial order. Despite these problems, the district court gave the defendant one last chance, ordered monetary sanctions, and instructed the defense counsel to take the "laboring oar" in the preparation of a final pretrial order. *Id.* at 1145. When the defendant did not comply with these instructions, the district court entered a default judgment in favor of the plaintiff. *Id.* at 1145–46. In light of these precedents and others that could be cited, the plaintiffs' counsel cannot contend that they were without warning as to the consequences of their conduct.

The plaintiffs' most compelling argument for clemency is that the sins of their attorneys should not be visited upon them. We have in the past expressed reluctance to affirm a dismissal where there is no sign of client neglect or awareness of the attorney's neglect. *See Lowe*, 897 F.2d at 274; *see also Herring v. City of Whitehall*, 804 F.2d 464, 466–68 (8th Cir.1986). This is not such a case. Five months before their case was dismissed, the plaintiffs in this case appeared before the district court where they heard the judge vent his frustrations

over their counsels' endless delays. Further, it is significant that a motion to dismiss the plaintiffs' complaint as a sanction for failure to comply with pretrial procedures was pending for ten months before it was finally granted. *Cf. Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1176–77, 1180 (7th Cir.1987) (rejecting a similar argument where defendants filed three motions to dismiss over a six-month period). The client picks the attorney and should be bound by that choice. *See Link v. Wabash R.R.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962). There is no injustice in holding a client responsible for acts of his attorney of which he is aware.

Finding no abuse of discretion, we will not disturb the district court's decision. It is unnecessary for us to decide whether summary judgment was appropriately entered against the section 1981 plaintiffs. Accordingly, the judgment of the district court is

Affirmed.