**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**GOLDEN ELEVATOR, INCORPORATED, et al., Defendants–Appellees.**

**No. 93–3827.**

United States Court of Appeals,
Seventh Circuit.

Argued May 17, 1994.

Decided June 21, 1994.

James A. Lewis, Asst. U.S. Atty., Office of the U.S. Atty., Springfield, IL (argued), for plaintiff-appellant.

Jerold W. Barringer, Nokomis, IL (argued), for defendants-appellees.

Before BAUER, WOOD, Jr., and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Ignoring deadlines is the surest way to lose a case. Time limits coordinate and expedite a complex process; they pervade the legal system, starting with the statute of limitations. Extended disregard of time limits (even the non-jurisdictional kind) is ruinous. "Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won." *Northwestern National Insurance Co. v. Baltes*, 15 F.3d 660, 663 (7th Cir.1994). The United States, which filed this suit to foreclose on a mortgage and collect from guarantors, missed several deadlines and suffered the usual consequence.

The complaint, filed in July 1992, was deficient. Defendants pointed to five problems. The United States filed an amended complaint fixing one of them, coupled with a brief contending that the other four were irrelevant. Defendants then sought dismissal of the complaint, and a magistrate judge ordered the plaintiff to respond. The United States did not file a response. The magistrate judge again ordered a response; once again the United States did not comply. At this point the district judge stepped in and on March 18, 1993, dismissed the first amended complaint and directed the United States to file a fresh complaint no later than April 2, 1993, rectifying the four remaining shortcomings. In order to impress on counsel the importance of complying with this order, the court added: "Plaintiff is informed that failure to file an amended complaint within the time prescribed will result in a dismissal of the case."

April 2 arrived, but an amended complaint did not. The United States did not ask for

more time—and it had not asked the district court to reconsider the order of March 18 dismissing the first amended complaint. On April 7 the district judge, true to his word, dismissed the case with prejudice. The United States did not seek reconsideration under Fed.R.Civ.P. 59(e) or file a notice of appeal. On August 12, 1993, it filed a motion under Fed.R.Civ.P. 60(b)(1), which authorizes a court to relieve a litigant from a judgment based on "mistake, inadvertence, surprise, or excusable neglect". According to a supervisory attorney who presented the motion, an inexperienced Assistant United States Attorney not only missed the series of deadlines but also failed to inform the head of the office's civil division that the case had been dismissed. After the "Civil Chief [AUSA] conducted a periodic case-by-case file review and found out about this case", he made the Rule 60(b) motion. The subordinate's omissions should be excused, the supervisor contended. The district court deemed the conduct inexcusable and added that the United States should concentrate on a newly-filed suit, seeking remedies for defaults after the dismissal of the first suit.

■ Dismissal with prejudice is a sanction, and sanctions should be proportionate to the wrong. *Ball v. Chicago*, 2 F.3d 752 (7th Cir.1993). Still, as *Ball* holds, a plaintiff's failure to comply with the court's orders interferes with the conduct of the litigation and justifies dismissal. See also *Newman v. Metropolitan Pier & Exposition Authority*, 962 F.2d 589 (7th Cir.1992) (plaintiff's failure to attend own deposition justifies dismissal). Just as an entity may elect not to sue, so it may elect to abandon pending litigation. Ignoring deadlines and orders marks the abandonment of a suit, as surely as does filing a notice of dismissal. E.g., *United States v. 7108 West Grand Avenue*, 15 F.3d 632 (7th Cir.1994). The United States disdained orders and deadlines repeatedly: invited to correct five deficiencies in the complaint, it corrected one; it did not respond to the motion to dismiss the amended complaint, despite two orders requiring it to do so; it did not seek reconsideration of the order dismissing the amended complaint and setting a deadline for a new complaint; it did not file a new complaint; it did not seek

reconsideration of the order dismissing the suit; it did not file a timely appeal. By August 1993 all it could do was throw itself on the mercy of the court—for that is what a motion under Rule 60(b)(1) does, and, if mercy is in short supply, the case is over. For appellate review of an order denying a motion under Rule 60(b) is exceptionally deferential. We review for abuse of discretion, and the district court's order stands unless no reasonable person could have acted as the judge did. *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 831 (7th Cir.1985); cf. *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust*, —— U.S. ——, ——, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (1993). Litigants whose lawyers fall asleep at crucial moments may seek relief from the somnolent agents; inexcusable inattention to the case (the only sensible description of what happened here) does not justify putting the adversary to the continued expense and uncertainty of litigation. The district court accordingly did not abuse its discretion in declining to reinstate the case.

■ The United States has no real quarrel with the decision on the Rule 60(b) motion. Instead it wants us to focus on the orders of March 18 and April 7. The order of March 18 was arguably erroneous, and that error (if there was one) influenced the termination of April 7. The district court dismissed the whole amended complaint, even though the four remaining deficiencies were in Count I, which sought foreclosure. Count II, which sought to collect on the guaranties, was in good order. Why, the United States asks, should a district court throw a good claim out with a bad one? One potential answer is that litigation is less complex if there is only one active complaint. Instead of referring to the first amended complaint for Count II and the second amended complaint for Count I, the district court called on the plaintiff to file a new complaint sufficient on both counts. The United States did not need to change Count II when refiling; and we suppose the district court would have been satisfied if the United States had jettisoned Count I and refiled, by April 2, a new complaint limited to the guarantors. More than a desire for neatness may explain the decision of March 18:

by failing to file the response for which the magistrate judge had called, the United States missed an opportunity to ask the district judge to limit his ruling to the foreclosure claim. At all events, the way to deal with an oversight was to ask for reconsideration, and, if that failed, to appeal. Having neglected its opportunities to complain of legal error, on which appellate review is plenary, the United States assumed the much tougher job of establishing abuse of discretion. It failed.

When asked at oral argument what the court should have done on April 7, after the United States had missed one deadline set by the magistrate judge and another set by the district judge, the supervisory Assistant United States Attorney suggested that the judge should have summoned a supervisor (perhaps the United States Attorney herself) into the courtroom and demanded an explanation. But a district judge is not the superior or supervisor of the United States Attorney, and the Executive Branch of the government is not accountable to the Judicial Branch for its litigation decisions. A district judge ought not interfere in the internal organization (or disorganization) of another branch of government. If the Executive Branch abandons a pending case, the district court should dismiss the litigation and devote its scarce time to the claims of parties seeking judicial attention. Supervision of Assistant United States Attorneys is a job for the Executive Branch, not for the Judicial Branch, and, if internal controls fail, the Executive Branch must accept the consequences.

The principle that the federal government is not estopped by its employees' misrepresentations, see *OPM v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), does not excuse the United States from complying with the rules established for the conduct of civil litigation. The idea underlying *Richmond* and earlier cases such as *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), is that employees of the Executive Branch cannot authorize departures from statutes and rules having the force of law. See also, e.g., *United States v. Medico Industries, Inc.,* 784 F.2d

840 (7th Cir.1986); *Board of Trustees of the Public Employees' Retirement Fund v. Sullivan,* 936 F.2d 988 (7th Cir.1991). An error by an executive official leaves the rule of law unaffected and enforceable. In this case it is defendants who want to enforce the rules, and the United States that wants to avoid them. The district court might have afforded the United States still another chance, but it did not have to.

AFFIRMED.

HARLINGTON WOOD, Jr., Circuit Judge, dissenting.

My idea as to what should have been done about the undisputed delinquency of the United States is at variance with the district court's exercise of its discretion which the majority approves.

There is no excuse in the record for the government's neglect, a neglect that no court should overlook. My view is simply that the ultimate punishment of dismissal with prejudice was more than necessary and was not tailored with discretion to the particular circumstances. It is only fair to note that this occurred before the present United States Attorney in the Central District of Illinois assumed her office.

It is not the executive branch which must accept the consequences resulting from this dismissal with prejudice, as the majority suggests. The consequences are a loss to the government, the treasury, and the public generally. When the government filed its complaint in March 1992 the amount alleged to be due the government on the mortgage was $235,361.58 plus interest, court costs, title costs, and attorneys' fees. Now the amount would be greater. Whatever the amount it is lost to the government unless subsequent separate efforts by the government on some dubious theory, as suggested by the government, recovers something. That effort raises separate problems which do not auger well for the government's success. As things stand now the debtors and guarantors will benefit from an unexpected and unjustified windfall at the government's expense.

The complaint dismissed by the district court consisted of only two counts, each naming different defendants. Count I sought mortgage foreclosure of a 1980 mortgage of Golden Elevator, Inc., while Count II sought a judgment against two unconditional mortgage guarantors, Robert H. Leenerts and Debra J. Leenerts. Though both counts were related to each other, the counts could stand alone and be separately tried.

Only Count I against the mortgagor was the subject of government neglect. The mortgagor, Golden Elevator, moved to dismiss that count for failure to state a claim under Fed.R.Civ.P. 12(b)(6). That motion raised technical defects, nothing substantial. Even the defendant mortgagor argued in the district court that it was anticipated that these claimed defects could easily be cured by the government.

Count II was against the mortgage guarantors only and was not the subject of any motion to dismiss. Count II was answered by the guarantors and was at issue when dismissed. The guarantors filed a routine answer to this count admitting some of the government's allegations and asking for strict proof as to the others. No affirmative defenses were raised.

Initially the government was attentive and diligent in this case. In response to Golden Elevator's motion to dismiss Count I, with the court's permission, the government amended the complaint, thereby correcting one of the five alleged errors. On September 30, 1992, the government also filed a response to the motion to dismiss regarding the remaining alleged errors. Golden Elevator filed its memorandum in support of its motion on December 1. The government did not file a reply memorandum by a December 9 deadline. As a result, on December 31 the magistrate judge ordered the government to file a memorandum in further support of its opposition to Golden Elevator's motion to dismiss, but no reply memorandum was filed. Judge Mills took over at this stage and eventually denied the motion to dismiss on February 9, 1993. Upon a motion by Golden Elevator Judge Mills reconsidered and, by order of March 18, 1993, warned the government to file a second amended complaint to address the four remaining unresolved defects contained in the original complaint or the case would be dismissed. No mention of failure to prosecute or dismissal with prejudice was mentioned in this order. Those important details appeared only in Judge Mills' subsequent order of April 7, 1993 which dismissed with prejudice. It was not noted by the district court that those defects raised by Golden Elevator in its motion to dismiss related only to Count I, not Count II.

I consider it an abuse of discretion in those circumstances to dismiss the entire case with prejudice. To have dismissed the whole complaint but without prejudice would no doubt have been adequate to wake up the government attorney. That would have prompted an amended complaint and permitted getting on with the merits of the lawsuit.

If something more serious was thought needed to get the government attorney's attention the dismissal of only Count I with prejudice, the only count for which a defendant sought dismissal, would have been more than enough. In that event Count II which was at issue could have been set for trial. It would, however, have been less complicated and adequate if the court had first tried some alternative short of dismissal, and certainly not dismissed with prejudice.

I see no justification for dismissing Count II. In my view, it was an exaggeration and premature to say that the government's neglect as to Count I evidenced an abandonment of the total case. The case could have been tried on Count II. Count II could have remained in the same complaint even with Count I dismissed out. This case was routine and simple. The complaint was not long or complex. In such a case I am not aware of the "neatness" of the pleadings being a factor.

The blame is put by the majority on the government for failing to ask the district judge to restrict his ruling to the foreclosure claim and not to the whole case. The government did not until it was too late, but it should have. Nevertheless since the mortgagor's dismissal motion applied only to Count I, it was the court's order which was broader than necessary. The resulting sanction was

more harsh than would likely have been necessary to accomplish the desired movement of the litigation. In the event there had been further neglect, this case could have been quickly ended, but I believe it was prematurely done at this time. .

The majority relies to a large extent on *Ball v. City of Chicago*, 2 F.3d 752 (7th Cir.1993). *Ball* holds, as the majority states, that "sanctions should be proportionate to the wrong." I agree with that requirement of proportionality. The majority further cites *Ball* as holding that "a plaintiff's failure to comply with the court's order interferes with the conduct of the litigation and justifies dismissal." That is an accepted and necessary principle. There is more to *Ball*, however. *Ball* contains a most helpful analysis of the governing principles of dismissal for want of prosecution set forth, as it says, for the guidance of district judges. I welcome the application of *Ball* to this case, and apparently only differ with my colleagues in its application here. *Ball* helpfully gathers in one opinion what the law was generally believed to be, but without making new law. *Ball* unfortunately came out a few months too late to serve as a refresher for Judge Mills. The plaintiff's neglect set out in *Ball* was varied and applicable to that case as a whole, not to just one count as in this present case. It is helpful to review some of the other suggestions in *Ball*.

*Ball* takes note of the age of the case to be dismissed. In *Ball* it was twenty-seven months old, "not ancient." *Id.* at 754. The present case was less than a year old and not without activity.

*Ball* also characterizes plaintiff's lawyers as "rude, dilatory, evasive, disrespectful, indeed contemptuous." *Id.* at 754. In this case counsel was negligent, not evasive, disrespectful, or contemptuous.

*Ball* considers the dismissal law in other circuits, for instance in the Third Circuit where "before dismissing a suit for failure to prosecute the district judge must notify plaintiffs directly." *Id.* at 754, citing *Dunbar v. Triangle Lumber & Supply Co.*, 816 F.2d 126, 129 (3d Cir.1987). In this circuit that rule also appears, but only in dicta. *Ball*, 2 F.3d at 756. Particularly when the govern-

ment as usual is represented by the United States Attorney who does not ordinarily handle litigation in this negligent fashion it is apparent that it was the personal default of an Assistant United States Attorney, not office policy. The judge could well have had a status call with notice to the United States Attorney personally. That would likely have resulted in an explanation and a quick remedy by the government. *Ball* does not mandate that notice be given to the client, but it does suggest its usefulness. *Id.*

In *Ball* this court commends to district judges as sound practice, but does not lay down the rule, that dismissal be a last resort "to be used only when efforts to get the lawyer to behave have failed or are adjudged fruitless." *Id.* at 758. That approach does not appear to have been considered in this case, except for the warning of the dire consequences which quickly followed. Sanctions could have been levied against the government or the government's attorney personally. *See Chilcutt v. United States*, 4 F.3d 1313 (5th Cir.1993) (ordering Assistant United States Attorney to personally pay attorneys' fees and costs as sanction for discovery abuses); *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365 (9th Cir.1980) (imposing sanctions personally against government's counsel); *Mattingly v. United States*, 939 F.2d 816 (9th Cir.1991) (holding that the government is not immune from Rule 11 sanctions); *United States v. KenMar Assoc., Ltd.*, 697 F.Supp. 400, 405 (W.D.Okla. 1987) (imposing sanctions against government in its mortgage foreclosure suit including defendant party's attorney's fees and costs, along with a reprimand for the Assistant United States Attorney).

*Ball* suggests that the delay caused by plaintiff's neglect of its own suit can work hardships on defendants and that is to be considered, as well as the impact on the trial judge's calendar. *Ball*, 2 F.3d at 752. In the short period of time involved in this case the prejudice to defendants could not have been much and none was claimed. Monetary sanctions could have assuaged whatever harm resulted to plaintiffs. A routine mortgage foreclosure of likely short duration could not be very disruptive of a trial calen-

dar. In any event these considerations do not appear to have been considered.

Another very important consideration of *Ball* is that "it is entirely proper for the judge to consider the likely merits of the suit in deciding whether to dismiss for failure to prosecute." *Id.* at 759. The foreclosure of a government mortgage and a suit against the guarantors ordinarily would not be expected to be frivolous, but to have merit. The "wrongdoer," as things now stand, will "get off scot-free." *Id.* at 759. That element also appears not to have been considered.

In *Ball* where the situation was more egregious than in the present case the court concluded that on "balance," after weighing the various factors we have touched on here, dismissal was justified, there was no abuse of discretion, and affirmed. However, the *Ball* court adds the telling comment that "we might well have ruled differently had we been in her place." *Id.* at 760. This present case is not as serious a dereliction as in *Ball.*

*Ball,* in sum, makes it clear that contemplating dismissal with prejudice "should induce caution." *Id.* at 753.

It is easy to see why the trial judge was irritated by the government's negligence and sanctioned it to a quick end, but that is not the exercise of discretion and caution that is first required. More discretion is usually required of a district judge than a doomsday warning and its imposition. This dismissal, in these circumstances, as I see it, is a clear abuse of discretion. There were other less drastic, less final, but still promising things that should first have been considered. This case greatly weakens the *Ball* precedent of a cautious, considered approach without a rush to dismissal.

Therefore, I must respectfully dissent from the views of my colleagues. I would vacate the dismissal and return the case to Judge Mills, not some other judge, to get the pleadings in shape and to try the case in short order. Rule 11 sanctions could be considered. If the government did not react properly to this opportunity, which I cannot imagine, and Judge Mills again dismissed the

government's case as he then should, there would be no further dissent from me.