Kimball H. LADIEN, M.D.,
Plaintiff–Appellant,

v.

Boris ASTRACHAN, Gloria Jackson
Bacon, and James Barter, et al.,
Defendants–Appellees.

No. 96–2672.

United States Court of Appeals,
Seventh Circuit.

Argued April 8, 1997.

Decided Oct. 22, 1997.

Paul R. Shuldiner, Karen F. Botterud (argued), Chicago, IL, for Kimball H. Ladien.

Carla J. Rozycki (argued), D. Scott Watson, Keck, Mahin & Cate, Chicago, IL, for Boris Astrachan, Gloria Jackson Bacon and James Barter.

Karen J. Dimond, Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Kenneth Boyle and Lee Combrinck-Graham.

Before EASTERBROOK, KANNE and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

For one year, Dr. Kimball Ladien was employed as a child psychiatrist at the Institute for Juvenile Research.[1] While there, Dr. Ladien voiced protest against what he believed to be gross medical misconduct by his employer and by the Illinois State Psychiatric Institute.

Because the Institute for Juvenile Research did not renew his contract for a second year, Dr. Ladien filed suit on June 22, 1992, alleging that the Institute retaliated

[1]. Dr. Ladien was a Child Psychiatry Fellow at the Institute for Juvenile Research, which is a division of the University of Illinois at Chicago and is operated in conjunction with the State of Illinois Department of Mental Health and Developmental Deficiencies.

against him for expressing his views. Six months later, he voluntarily dismissed his complaint. Ten months later, on October 27, 1993, he filed this lawsuit which is the subject of this appeal.

Dr. Ladien claims that the defendants[2] violated his free speech and due process rights under the Constitution in violation of 42 U.S.C. §§ 1983 and 1985, in that he was subjected to intentional infliction of emotional distress in violation of Illinois law.

The defendants moved to dismiss the complaint asserting immunity and the statute of limitations. On July 26, 1994, the district court granted in part and denied in part the defendants' motions. The court found timely the claims against the defendants in their individual capacity and found now time barred the claims against the defendants in their official capacity. The district court further found that the Eleventh Amendment cloaked the institutional defendants with governmental immunity and therefore it dismissed all claims against the institutional defendants.

Consequently, the remaining defendants in this action are nineteen persons sued in their individual capacity: eighteen are members of the Board of Trustees of the University of Illinois at Chicago, and Governor Jim Edgar, an *ex officio* member of the Board of Trustees.

Throughout the pleading and discovery stages of this case, defendants have filed various motions to compel Dr. Ladien to conform to judicial orders and discovery requests. The district court reviewed each of defendants' motions and ultimately sanctioned Dr. Ladien for his repeated misconduct by dismissing his case with prejudice. We now review in some detail the type of conduct that led to the dismissal of Dr. Ladien's case.

### HISTORY

*The September 21, 1994 Status Hearing*

At this hearing, the court admonished Dr. Ladien for *ex parte* correspondence with the court and ordered him to cease such attempts:

> The Court: Mr. Ladien, I just want to say you sent several things to me in the mail and you shouldn't do that.
>
> Dr. Ladien: I found out afterwards that I shouldn't. I apologize.
>
> The Court: It's no big deal, but it could be construed as ... trying to influence the Court one way or another.

Rec. Tr. Vol. 1 at 2. The court further ordered Dr. Ladien not to directly contact the individual defendants, and directed him to deal only with defendants' counsel:

> The Court: Here is the way it is, Doctor: You sued them. You know, you have in a civilized fashion attacked them. They are entitled to defend themselves.... [M]y job is to follow the rules. The rules say that when you attack a person, which you have done—you have attacked a number of people here—then you have to deal with their lawyer. If they were *pro se*, great, you could deal with them, but they are not. They hired a lawyer. You got to deal with their lawyer. And that is it. And it is a violation—you will get yourself sanctioned if you deal directly with the clients.

Rec. Tr. Vol. 1 at 14–15.

Although the court gave clear instructions against direct contact with defendants, on October 14, 1994, Dr. Ladien sent a letter to Michelle Thompson. Thompson is the Special Assistant to the President of the University of Illinois, Stanley Ikenberry. Ikenberry is a named defendant in this matter. The stated purpose of Dr. Ladien's letter was to set a meeting with the defendants so that the parties could discuss this case. Dr. Ladien also mailed a copy of this letter directly to the court. Rec. Pl. Vol. 2, Doc. No. 50 Exh. 4.

*The January 19, 1995, Hearing on Motion for Sanctions:*

On October 24, 1994, in response to Dr. Ladien's October 14 letter to Thompson and

---

**2.** The defendants named by Dr. Ladien were the University of Illinois at Chicago, the Illinois Department of Mental Health and Developmental Deficiencies, the Institute for Juvenile Research, and various other persons in their individual capabilities, who served on the University's Board of Trustees or as officials of the institutional defendants.

the court, the defendants filed a motion for sanctions outlining Dr. Ladien's disregard of the order that he not communicate directly with the defendants or the court. At the hearing on the motion for sanctions, the court noted that Dr. Ladien's October 14 letter to Thompson violated its order; nevertheless, the court refused to impose sanctions against Dr. Ladien. The court reasoned that Dr. Ladien's letter was not burdensome to defendants and therefore no real harm had been done.

*The March 16, 1995 Hearing on Motion to Compel or to Dismiss for Failure to Comply with Discovery*

The defendants filed a motion to compel or, alternatively to dismiss for failure to comply with discovery. At the hearing on this motion, the court was informed that on November 16, 1994, defendants served Dr. Ladien with their First Set of Interrogatories and their First Request for the Production of Documents. According to defendants, Dr. Ladien's response to these discovery requests was "wholly inadequate." After discussing with his counsel Dr. Ladien agreed to supplement the discovery responses by March 8. However, Dr. Ladien failed to provide the supplemental responses as promised. The court acknowledged Dr. Ladien's failure to follow proper discovery procedure, but, instead of imposing sanctions, the court persuaded defendants to withdraw their motion to compel and/or dismiss and allow Dr. Ladien a 21–day extension to respond to defendants' discovery requests.

*The April 25, 1995 Status Hearing*

At the April 25, 1995 status hearing,[3] defendants once again complained that Dr. Ladien had not properly complied with their discovery requests. In response, Dr. Ladien asserted that the defendants made inadequate discovery responses. The court indicated that the case had been pending a long time but that it would nevertheless extend the discovery cutoff date to September 29. Furthermore, the court cautioned:

> And if somebody doesn't do what they are supposed to do, you can come in on motion and I am going to be real heavy-handed in making sure that people comply. If the defendants don't comply, they could end up getting judgments entered against them. If you [Dr. Ladien] don't comply, you could end up having your case tossed out. That is just a metaphor, but it means you lose— would lose.... They [defendants] are subject to the same rules that you [Dr. Ladien] are subject to.

Rec. Tr. Vol. 5 at 5.

Two days after the status hearing, on April 27, defendants filed a motion for protective order and/or for sanctions. This motion was filed by defendants, in part, to protect the identity of a former patient who had been revealed in one of Dr. Ladien's discovery requests, which was in violation of the Mental Health and Developmental Disabilities Confidentiality Act, 740 Ill. Comp. Stat. §§ 110/1 *et seq.* In response to defendants' motion, the court entered an Agreed Protective Order prohibiting any further reference to specific patients during the discovery process.

*The July 12, 1995 Hearing on Motion to Dismiss as a Sanction for Repeated Discovery Abuse and Failure to Comply with the Court's Orders*

This motion to dismiss was based on alleged repeated discovery abuses by Dr. Ladien. On April 25, 1995, over 5 months after defendants had served their discovery requests upon Dr. Ladien, he provided defendants with a signed verification that the responses to his interrogatories and his production of documents were "complete." Notwithstanding Dr. Ladien's verification, on May 23, at the deposition of a non-party, Dr. Ladien's counsel used as exhibits, over the defendants' objections, documents which Dr. Ladien had not disclosed to defendants. Moreover, one of the documents used at this

**3.** Dr. Ladien was present at the status hearing. He was not, however, represented by counsel at the hearing. One of defendants' attorneys informed the court that Dr. Ladien's counsel had a conflict and had called defendants' counsel to inform defendants that they could not attend the status hearing.

deposition identified a specific mental health patient—which violated the court's Agreed Protective Order not to disclose the names of patients. Shortly after this deposition, Dr. Ladien's counsel agreed to review the accuracy of Dr. Ladien's discovery production. Then, on June 2, Dr. Ladien delivered to defendants two large shopping bags of documents which previously had not been disclosed. Upon examination of these new documents, defendants learned that Dr. Ladien had personally made several Freedom of Information Act ("FOIA") requests in late April or early May of 1995—which would, if mailed after April 27, have contravened the April 27 court order that all FOIA requests be made only by Dr. Ladien's counsel and not by Dr. Ladien himself.[4]

The court declined to impose a sanction of dismissal at that time. The court did, however, continue the matter until the next status hearing, which the court set for September 6. The court then issued a warning:

> Dr. Ladien, at some point—there is a lot of judges who would take the easy way out and the easy way out is to let you trip up procedurally, throw the case out and then you never get to the merits of it. And it is a—it is a temptation. I actually admit it in this particular case. So you really got to do what your lawyer says.

Rec. Tr. Vol. 6 at 8–9. The hearing on the defendant's motion to dismiss as a sanction resumed on September 6, 1995 and was continued until October 18, 1995.

### The October 18, 1995 Hearing on Motion to Dismiss and/or For Other Sanctions

This motion for sanctions was based on two incidents. On September 21, Dr. Ladien served defendants' counsel with a 42-page document entitled "Motion to Settle Out Of Court Or Begin Parallel Criminal Charges Against Defendants [and defendants' counsel] And Others For Continuing Violations Of Plaintiff's Constitutionally-Protected Rights." Rec. Pl. Vol. 3, D. No. 72 at 13 and Exh. 3. In this "motion" were Dr. Ladien's settlement

demands and a threat to pursue criminal charges if the settlement demands were not met. Dr. Ladien also delivered a letter directly to various defendants and their counsel that outlined Dr. Ladien's settlement demands. Rec. Pl. Vol. 3, D. No. 72 at Exh. 4. Dr. Ladien's counsel disclaimed any part in drafting the "motion" or letter.

On September 25, at a session of Dr. Ladien's deposition, defendants discovered that Dr. Ladien had audio tapes of his University of Illinois grievance proceeding—a relevant issue in this case. When defendants requested that the tapes be promptly produced, Dr. Ladien refused, even though the tapes were properly discoverable.

The court ordered Dr. Ladien to produce the tapes of the University of Illinois grievance hearing. And as for Dr. Ladien's September 21 "motion" and the accompanying settlement demand letter the court stated:

> I believe that Dr. Ladien was engaged in undue harassment of individual defendants, I ordered him not to have any direct contact with defendants. And that is something that, frankly, wasn't even contested. And it strikes me that—this kind of action, if there is no basis for it, certainly is an effort to get around that injunction.... [L]et me say this: I am going to read their [defendants'] motion to dismiss. I can do two things, Doctor.... [I] can sort of reach the conclusion that this is a bizarre, irrational, obsessive act on your part and basically dismiss it and let you go to the Court of Appeals or somewhere else in the world to bring this trouble ... [o]r I can do what I have been doing over a long period of time, urging you to put ... yourself in the hands of a competent lawyer.... But if ... you engage in immoral or irrational acts which make it impossible for the lawsuit to be conducted in a civilized fashion, which is what a lawsuit is—it is a civilized way of resolving significant differences—then I will have proven myself dum[b] not to have dismissed it.... I

---

4. We are reluctant to rely heavily upon this alleged FOIA request violation because, as Dr. Ladien's counsel has pointed out, these FOIA requests may have been made prior to the court's order but yet they may have been processed and answered after the court order, thus making them non-violative of the court's order. In any event, this alleged violation, whether accurate or inaccurate, would not change our analysis.

can be patient, but if it turns out you are really irrational and obsessive and you aren't going to play by the rules, my patience actually ends up hurting all of us.

Rec. Tr. Vol. 8 at 9–11. Although the court imposed no sanctions at the hearing, it scheduled another hearing at a later date in order to give further consideration to defendants' motion for sanctions.

### Dr. Ladien's Counsel's November 8, 1995 Motion to Withdraw

On November 8, 1995, Dr. Ladien's counsel presented the court with a motion to withdraw from the case, explaining that Dr. Ladien would not comply with his advice to produce the University of Illinois grievance proceeding tapes so that they could be turned over to defendants' counsel. Specifically, Dr. Ladien's counsel's motion states, in pertinent part, that "[c]ounsel has attempted to obey recent Court orders, however, the client's actions are making it unreasonably difficult to do so. Therefore, counsel feels that he will be unable to properly advance the interests of his client consonant with his duties to the Court and opposing counsel." Rec. Pl. Vol. 3, D. No. 74. In response to his counsel's motion, however, Dr. Ladien agreed to turn over the tapes if his lawyer would abandon the option to withdraw. Counsel agreed and retracted the motion to withdraw.

### The December 14, 1995 Continued Proceedings on the Motion to Dismiss as a Sanction

At this hearing, the court reviewed whether Dr. Ladien's case would be dismissed as a sanction for his conduct. Once again, however, the court declined to impose sanctions. But the court stated that Dr. Ladien's misbehavior was having a "cumulative effect." Moreover, the court stated that

I just want to make it clear, this is it. This is it. The whole goal of a trial is to resolve a dispute.... I will lay down some clear guidelines and there just won't be any exceptions to those guidelines and everything is going to have to operate within them. And if that means somebody wins and somebody loses, it will end the

way all lawsuits do, with a winner and a loser.

Rec. Tr. Vol. No. 13 at 15.

### The December 20, 1995 Entry of Sanctions Against Dr. Ladien and Extension of Defendants' Discovery Cutoff Date

The court reconvened the hearing on defendant's motion to dismiss Dr. Ladien's case as a sanction. Instead of dismissing the case, the court decided to sanction Dr. Ladien by holding him to a December 10, 1995 discovery deadline. Defendants, on the other hand, were allowed to complete their discovery through April 20, 1996.

### The March 26, 1996 Motion to Dismiss as a Sanction

On March 26, 1996, defendants, once again, presented a motion to dismiss as a sanction for Dr. Ladien's misconduct. This motion was based on Dr. Ladien's failure to timely respond to defendants' First Request to Admit and Second Set of Interrogatories, and his failure to turn over documents that were properly discoverable. Defendants also claim that Dr. Ladien had again threatened to file criminal charges against them or their attorneys if they did not comply with his settlement agreement. The court set a hearing date of April 16, 1996 to give Dr. Ladien time to respond to defendants' latest motion to dismiss.

### The April 16, 1995 Hearing and Motion to Dismiss

The court heard argument on the motion to dismiss and then indicated that it would grant the motion. The court noted that "I have been a judge eleven and a half years now, something like that—I have never dismissed a lawsuit ... because I felt people weren't engaging in the complex rules of discovery." Rec. Tr. Vol. 15 at 40. Nonetheless, the court concluded that it would dismiss the case because Dr. Ladien had demonstrated that he was not going to comply with the orders of the court or the rules regarding discovery.

*The May 7, 1996 Entry of Dismissal*

The court held a status hearing and entered the order of dismissal with prejudice. At the hearing, Dr. Ladien's counsel objected asserting that the sanction of dismissal was excessive. The court, however, reaffirmed its decision and stated:

> I believe that Dr. Ladien ... has demonstrated that he ... does not have the capacity to function as a plaintiff in a civil court action in this Court. And that is really why it is being dismissed. And there is an accumulation of a lot of things that have occurred which lead me to that conclusion.

Rec. Tr. Vol. 16 at 3. Dr. Ladien filed a motion for reconsideration, which the court denied and this appeal followed.

### ANALYSIS

#### A. Standard of Review

It is axiomatic that we review only for an abuse of discretion the district court's decision to sanction a plaintiff by dismissal of his case. *See Anderson v. United Parcel Service,* 915 F.2d 313, 315 (7th Cir.1990). We are obligated to affirm the dismissal of a case unless "it is clear that no reasonable person could concur in the trial court's assessment of the issue under consideration." *Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.,* 869 F.2d 1058, 1061 (7th Cir.1989) (citations omitted). The abuse of discretion standard "means something more than our belief that we would have acted differently if placed in the circumstance confronting the district judge." *Anderson,* 915 F.2d at 315. To disagree with the district court's decision and to find that the court abused its discretion are two different things. *See id.* (citing *Tamari v. Bache & Co.,* 838 F.2d 904, 909 (7th Cir.1988)). "The district court's decision must strike us as fundamentally wrong for an abuse of discretion to occur." *Anderson,* 915 F.2d at 315.

#### B. The Dismissal of Dr. Ladien's Case

Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure states, in pertinent part:

> *Failure to Make Disclosure or Cooperate in Discovery: Sanctions*
>
> (b) *Failure to Comply With Order.*

· · ·

> (2) *Sanctions by Court in Which Action is Pending.* If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

· · ·

> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

Fed.R.Civ.P. 37(b). Furthermore, Rule 41(b) of the Federal Rules of Civil Procedure states, in pertinent part:

> *Involuntary Dismissal: Effect Thereof.* For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.

Fed.R.Civ.P. 41(b).[5] These rules allow a district court to impose sanctions, including dismissal, upon a party for that party's "persistent failure to comply with discovery and scheduling orders." *Patterson,* 852 F.2d at 285. Moreover, a district court's power to dismiss a case "serve[s] not only to protect defendants but also to aid courts in keeping administrative control over their own dockets and to deter other litigants from engaging in

---

**5.** A dismissal under Rule 37(b)(2)(C), however, is distinct from a dismissal under Rule 41(b) in that a Rule 37(b)(2)(C) dismissal, unlike Rule 41(b) dismissal, requires both a failure to comply with a discovery order and a showing of willfulness, bad faith, or fault. *See Patterson v. Coca–Cola Bottling Co.,* 852 F.2d 280, 283 (7th Cir.1988); *see also Roland v. Salem Contract Carriers, Inc.,* 811 F.2d 1175, 1179 (7th Cir.1987). The distinction between these two rules, although important, is not relevant in the analysis of the present case and therefore requires no further discussion.

 

... dilatory behavior." *Id.* (internal quotations omitted).

█ Dismissal is a harsh sanction and therefore its use should be limited. *See United States v. Golden Elevator, Inc.*, 27 F.3d 301, 303 (7th Cir.1994). This case, however, presents a situation where its use is appropriate. Dr. Ladien has urged this Court to reverse the dismissal of his lawsuit, arguing that the sanction was out of proportion. We might have agreed with Dr. Ladien if this were a situation where the district court had dismissed his case for a single act of violative conduct. However, as the record reveals, Dr. Ladien, on many occasions, abused the discovery process and violated the court's clearly articulated orders. Dr. Ladien's misconduct includes, but is not limited to, the following: communicating directly with the court on two separate occasions—the second in direct violation of the court's order that he should not do so; failing to timely produce discoverable documents (*i.e.*, the grievance hearing tapes); inaccurately verifying that his document production was complete and thereafter using undisclosed documents as exhibits in a deposition; improperly threatening to bring criminal charges against defendants if his settlement demands were not met; and attempting to directly contact individual defendants in violation of the court's order. Cumulatively these acts of misconduct warranted the dismissal of his case.

It is painfully apparent that throughout the course of this case the district judge "bent over backwards" to avoid imposing the ultimate litigation sanction. He repeatedly cautioned Dr. Ladien that his conduct was inappropriate and that it was coming dangerously close to warranting dismissal. Nevertheless, Dr. Ladien seemed compelled to abuse the discovery process and ignore the court's orders. The district court's response was not disproportionate to Dr. Ladien's conduct. *See Golden Elevator, Inc.*, 27 F.3d at 303. The district judge was exceedingly patient with Dr. Ladien and, in fact, would have

been justified in acting earlier to end the case.[6]

There was no abuse of discretion and the dismissal is AFFIRMED.

---

**6.** We might be more reluctant to uphold this sanction of dismissal if the contumacious conduct was solely the work of Dr. Ladien's attorney. *See Anderson,* 915 F.2d at 315 (noting our reluctance to affirm a dismissal where the sanc-tionable conduct is unknown to the client). This is not the case, however, because the record is replete with misconduct performed solely by Dr. Ladien himself.