965 F.2d 298
 Fed. Sec. L. Rep. P 96,852, 22 Fed.R.Serv.3d 729
 Nicholas GOVAS and Andrew Yiannias, Plaintiffs-Appellants,
v.
Shirley CHALMERS, Executor of the Estate of Hymen P.
Chalmers, Andy Nanos and Electronic, Missiles &
Communications, Incorporated,
Defendants-Appellees.
 No. 91-1687.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 16, 1992.
Decided June 2, 1992.
Rehearing Denied Oct. 7, 1992.
 
 Daniel F. Webb, Chicago, Ill. (argued), for plaintiff-appellant.
 Ronald L. Marmer, Howard R. Barron, Howard S. Suskin (argued), James A. Geocaris, Jenner & Block, William M. McErlean, Rudnick & Wolfe, Chicago, Ill., for defendants-appellees.
 Before BAUER, Chief Judge, KANNE, Circuit Judge, and WOOD, JR., Senior Circuit Judge.
 HARLINGTON WOOD, JR., Senior Circuit Judge.
 
 
 1
 This case illustrates the proverbial straw that broke the camel's back. Judge Williams dismissed the plaintiffs' claims for discovery violations. Plaintiffs argue that we should reverse Judge Williams because dismissal is too harsh a sanction on these facts. As Judge Williams recognized, the plaintiffs' conduct was "dilatory and evasive" throughout the course of litigation. December 3, 1990, Memorandum Opinion and Order at 5, 1990 WL 205275. Moreover, Judge Williams forewarned plaintiffs after repeated discovery violations that any further evasive conduct would result in dismissal. Despite this admonition, the plaintiffs again failed to comply with discovery requests. This was understandably the final straw and we affirm this dismissal.
 
 I.
 
 2
 In 1986 Nick Govas and Andrew Yiannias filed a suit for violations of the Securities Exchange Act of 1934, the Racketeer Influenced and Corrupt Organizations Act, and common law fraud against Hymen Paul Chalmers, Andy Nanos and Electronics, Missiles & Communications, Incorporated (collectively referred to as "EMC"). (Tina Parakevopoulos was also a plaintiff in this suit, however, she has not joined in the appeal before us today.) In May 1987, EMC served the plaintiffs with the first set of interrogatories and requests for documents. Govas and Yiannias belatedly served written responses to these discovery requests and then refused for nearly two years to release their documents for defendants' inspection. Throughout this period EMC sought to compel discovery.
 
 
 3
 On February 7, 1989, the district court issued a minute order in response to EMC's motion to dismiss Parakevopoulos's claims. Although denying this motion, the district court admonished all the plaintiffs that a continuation of their pattern of dalliance and delay would not be tolerated. In April of 1989 EMC served plaintiffs with second requests for document production and second sets of interrogatories.
 
 
 4
 Despite the February 1989 admonishment, the plaintiffs came before the district court again on a motion for dismissal for discovery violations. This time the motion for dismissal was directed at all three plaintiffs. Judge Williams responded to this motion on December 21, 1989. Judge Williams's December 1989 Memorandum Opinion and Order is replete with examples of plaintiffs' continued evasive and dilatory tactics. Even more startling than the incidents of delay is the district court's indication that Govas and Yiannias tried to hide evidence which weakened their claims. For example, this order indicates that Govas failed to disclose information about substantial profits received from the sale of a large amount of EMC stocks before November 1985--a fact that seems to contradict Govas's allegations that he incurred substantial losses as a result of retaining EMC stock, and a fact that directly contradicts Govas's prior allegation that he retained his EMC shares until around November 1985. Apparently, Yiannias was also guilty of conveniently failing to disclose potentially harmful information. For example, in response to an interrogatory asking for disclosure of his bank accounts, Yiannias revealed only two accounts. It was later revealed, however, that Yiannias had eleven other accounts. The district court did not buy Yiannias's argument that this misstatement was unintentional. Indeed, we cannot help but question whether Yiannias in making this misstatement was hiding financial information that could have weakened his argument that he suffered large losses as a result of holding EMC stock.
 
 
 5
 Despite the district court's clear recognition that the plaintiffs had engaged in dilatory and evasive discovery tactics, the district court patiently refrained and, therefore, denied EMC's motion for dismissal. The district court did, however, award costs and a $1,000 sanction against plaintiffs. And, more importantly, the district court warned the plaintiffs, in this December 1989 order, that "any other dilatory, evasive or improper conduct whatsoever will result in the dismissal of [the plaintiffs'] case with prejudice." December 21, 1989, Memorandum Opinion and Order at 8, 1989 WL 157506.
 
 
 6
 On January 8, 1990, after receiving this warning, plaintiffs supplemented their interrogatory responses. In doing so, plaintiffs informed EMC that they had further documents in response to interrogatories. On January 31, 1990, defense counsel went to plaintiffs' attorneys' offices to inspect these extra documents. Plaintiffs' counsel then presented defense counsel with 8,957 documents. Plaintiffs presented this mass of documents in response to Interrogatory No. 2--an interrogatory served on plaintiffs in May of 1987. The instructions to the interrogatories made it clear that plaintiffs were to identify which plaintiffs, if any, received each document. The plaintiffs did not comply with these instructions. Because this information was important to EMC's case, EMC repeatedly requested plaintiffs to identify these documents. Plaintiffs have yet to identify the great majority of these documents.
 
 
 7
 Finally, on March 15, 1990, EMC filed a renewed motion to dismiss, alleging that plaintiffs' failure to identify the thousands of new documents violated discovery rules and the court's December 21, 1989, order. Judge Williams referred this motion to Magistrate Judge Bucklo for a report and recommendation. Magistrate Judge Bucklo found that the plaintiffs' depositions and answers to Interrogatory No. 8 provided defendants with sufficient information regarding these voluminous documents. Moreover, Magistrate Judge Bucklo determined that the plaintiffs' failure to comply with Interrogatory No. 2 was not willful. Magistrate Judge Bucklo then recommended that the district court deny the motion to dismiss.
 
 
 8
 The district court did not agree with Magistrate Judge Bucklo's characterization of the plaintiffs' conduct. To the contrary, the district court concluded that the plaintiffs' failure to identify these 9,000 documents constituted a willful continuance of dilatory and evasive discovery tactics despite explicit warnings. For this reason, on December 3, 1990, the district court granted EMC's renewed motion for dismissal, and on March 11, 1991, the district court denied the plaintiffs' motion for reconsideration. Govas and Yiannias appeal. We affirm.II.
 
 
 9
 The first argument raised in plaintiffs' brief to this court is that Judge Williams applied the wrong standard of review when evaluating the magistrate judge's recommendation to deny dismissal. Namely, plaintiffs argue in this brief that Judge Williams should have reviewed the magistrate judge's order under the clearly erroneous or contrary to law standard rather than the de novo standard. However, as the plaintiffs seemed to concede at oral argument, the district court reviews de novo a magistrate judge's recommendations on dispositive motions. See 28 U.S.C. § 636(b)(1)(B), (C); Fed.R.Civ.P. 72(b). A motion to dismiss is a dispositive motion, and therefore the district court appropriately applied the de novo standard of review.
 
 
 10
 EMC moved for dismissal under Rules 37 and 41(b) of the Federal Rules of Civil Procedure. Rule 41(b) is a general provision allowing dismissal for violations of court orders, whereas Rule 37 allows dismissal for violations of discovery rules and discovery orders. Because Rule 37 is tailored to the discovery context, the Supreme Court has indicated that Rule 37, and not Rule 41(b), applies to dismissals in this context. Societe Internationale v. Rogers, 357 U.S. 197, 206-07, 78 S.Ct. 1087, 1092-93, 2 L.Ed.2d 1255 (1957). Plaintiffs' dilatory and evasive discovery tactics lead to Judge Williams's dismissal, and we will, therefore, review this dismissal under Rule 37.
 
 
 11
 Rule 37(b) of the Federal Rules of Civil Procedure authorizes the district court to dismiss an action or proceeding when a litigant fails to obey a court order directing discovery. Moreover, Rule 37(d) authorizes dismissal when a party fails to serve answers or objections to interrogatories submitted under Rule 33. We review Rule 37 dismissals for abuse of discretion, Hindmon v. National-Ben Franklin Life Insurance Corp., 677 F.2d 617, 620 (7th Cir.1982), and we review the factual findings underlying such dismissals under the clearly erroneous standard, id. at 621.
 
 
 12
 As the above facts make clear, the district court did not dismiss this case for an isolated discovery violation. To the contrary, the plaintiffs demonstrated evasive and dilatory discovery tactics for several years before this dismissal. The record lists several incidents where the plaintiffs delayed in turning over records and in otherwise responding to interrogatories--including the nearly three-year delay in turning over the 9,000 documents which lead to the dismissal of this case. Moreover, as we indicated above, plaintiffs conveniently withheld information which might have been harmful to their case.
 
 
 13
 The plaintiffs' tactics did not go without warning. In fact, the district court gave one warning in a February 1989 minute order, and in December of 1989, Judge Williams issued a more direct and explicit admonition that "any other dilatory, evasive or improper conduct whatsoever " would result in dismissal. Nonetheless, plaintiffs again demonstrated evasive tactics within weeks after the issuance of this December 1989 admonition. By this we mean plaintiffs' January 9, 1990, production of nearly 9,000 unlabeled documents. Plaintiffs produced this morass of documents in response to Interrogatory No. 2 which asked the plaintiffs to identify any EMC-related documents in the plaintiffs' possession or control. This interrogatory was served on the plaintiffs in May of 1987, nearly three years before this production. In prior responses to Interrogatory No. 2, Govas, Yiannias and Parakevopoulos indicated that they had relatively few EMC-related documents in their possession or control. This means that plaintiffs held back information about these 9,000 documents until after the court's December 21, 1989, issuance of discovery sanctions and after the December 29, 1989, discovery cut-off.
 
 
 14
 Not only did the plaintiffs delay in producing this morass of documents, but the plaintiffs also failed to comply with the instructions to the interrogatories in turning over these documents. The instructions to the interrogatories clearly asked plaintiffs to indicate which documents each plaintiff had received. This information was not simply a matter of convenience for the defendants. To the contrary, this information was relevant to an important issue in the case. Namely, EMC sought this information to determine what documents each plaintiff could have relied on in deciding whether to purchase EMC stock--such reliance was relevant to plaintiffs' claims under section 10(b) of the Securities Exchange Act, see LHLC Corp. v. Cluett, Peabody & Co., 842 F.2d 928, 931 (7th Cir.), cert. denied, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 329 (1988). Indeed, the district court concluded that this information was so important that the belated production of the nearly 9,000 documents "was basically useless" without it. March 11, 1991, Memorandum Opinion and Order at 3, 1991 WL 36721. In an attempt to secure this information, defense counsel repeatedly requested the plaintiffs to comply with Interrogatory No. 2 and somehow identify which plaintiffs received each of the documents. The plaintiffs ignored these requests. And, to this day the plaintiffs have, at most, identified only a "small portion" of these documents. See id. The district court concluded that the plaintiffs willfully failed to comply with its order and with discovery rules in failing to identify these 9,000 documents. The instructions to the interrogatories and EMC's repeated requests for this information gave the plaintiffs ample notice that they had not complied with this discovery request. In light of this notice, the plaintiffs' prior pattern of evasive discovery tactics, and district court admonitions, we agree with the district court's characterization of the plaintiffs' conduct.
 
 
 15
 Govas and Yiannias argue the district court abused its discretion in dismissing their claims because Rule 33(c) relieves them of a duty to indicate which plaintiffs received each of the documents. We do not agree. Under Rule 33(c), when a response to an interrogatory may be derived from business records and when the burden of deriving the answer from the records is substantially the same for both sides, the production of these records sufficiently answers the interrogatory. Fed.R.Civ.P. 33(c). However, a party that knows or has access to an interrogatory answer may not use Rule 33(c) to avoid furnishing a responsive interrogatory answer where, as here, the answer cannot be ascertained from the documents. In this case the district court concluded that the plaintiffs failed to label or organize the heap of nearly 9,000 documents produced in a manner that disclosed which plaintiff, if any, received the documents. The district court also concluded that this information is not apparent from the face of the documents. This means that the plaintiffs had exclusive access to this information, and, as such, Rule 33(c) does not excuse plaintiffs' failure to provide this requested information.
 
 
 16
 The magistrate judge concluded that the plaintiffs' depositions and answers to Interrogatory No. 8 provided a sufficient response to Interrogatory No. 2. The district court, however, rejected this conclusion. As the district court recognized, Interrogatory No. 8, which asks plaintiffs to identify written communication they had with their co-plaintiffs and with defendants Chalmers and Nanos, is much narrower in scope than Interrogatory No. 2, which asks plaintiffs to identify all EMC-related documents regardless of their source. Therefore, we agree with the district court's conclusion that the answers to Interrogatory No. 8 do not explain which plaintiff received each of the 9,000 documents produced in response to Interrogatory No. 2. Furthermore, the district court correctly concluded that plaintiffs' answers in their depositions did not sufficiently identify these 9,000 documents. We must remember that in their depositions the plaintiffs merely indicated that they had a few EMC-related documents and that they could not identify the contents of these documents. It is unlikely, to say the least, that such vague answers could help to identify the nearly 9,000 EMC-related documents.
 
 
 17
 At oral argument plaintiffs argued that the district court abused its discretion in dismissing the plaintiffs' claims because identifying which plaintiffs received each of the 9,000 documents was overly cumbersome, and plaintiffs suggested that the district court should have required a less cumbersome alternative. First, we note that any suggestions for a compromise should have been made to the district court. Next, we remind the plaintiffs that the extent of the burden is their own creation. Yes, it is burdensome to sort through 9,000 unlabeled documents. However, this burden would have been far less if plaintiffs had complied with the instructions to the interrogatories and identified the documents in the first instance. We also remind the plaintiffs that EMC requested these documents in May of 1987. This gave plaintiffs nearly three years to sort and label these documents. In short, it was the plaintiffs' failure to produce, sort, and identify the documents within this three-year period which lead to the extent of this burden. The plaintiffs made their bed and now they must lie in it.
 
 
 18
 The district court adequately warned plaintiffs that it would not tolerate any further evasive tactics, and the district court understandably got fed up when the plaintiffs willfully continued such tactics. Our case law makes it clear that a district court has the discretion to dismiss a claim when a party demonstrates a pattern of dilatory and evasive discovery tactics and when that party willfully persists in such tactics in violation of court warnings and orders. Hal Commodity Cycles Management Co. v. Kirsh, 825 F.2d 1136, 1138 (7th Cir.1987) (noting that this court has repeatedly upheld the entry of default judgments for discovery violations when a party willfully chooses " 'not to conduct its litigation with the degree of diligence and expediency prescribed by the trial court....' " (citing C.K.S. Engineers, Inc. v. White Mountain Gypsum Co., 726 F.2d 1202, 1205 (7th Cir.1984))). See also Metropolitan Life Ins. Co. v. Estate of Cammon, 929 F.2d 1220, 1223 (7th Cir.1991) (upheld entry of default judgment under Rule 37 where litigant provided few documents in response to discovery demands despite district court's warning that it would enter default judgment if documents were not produced within a specified amount of time); Sere v. Bd. of Trustees, 852 F.2d 285, 290 (7th Cir.1988) (upheld dismissal against party that willfully failed to comply with court orders); Hindmon, 677 F.2d at 620-22 (affirmed Rule 37 dismissal against plaintiff who failed to appear for deposition, failed to properly answer interrogatories, and failed to respond to request for production). Indeed, we have indicated that less severe conduct than this warrants Rule 37 dismissal. See, for example, Patterson v. Coca-Cola Bottling Co., 852 F.2d 280, 283 (7th Cir.1988) (indicating that dismissal for discovery violations might be permissible without a showing of willfulness or bad faith); Hal Commodity, 825 F.2d at 1139 (upheld entry of default judgment in the absence of interim sanctions). Plaintiffs' conduct fits soundly within that category of conduct which warrants Rule 37 dismissal, and Judge Williams acted well within her discretion when she dismissed the plaintiffs' claims for discovery violations. Indeed, she had no other choice.
 
 III.
 
 19
 For the above reasons, we affirm the district court's order to dismiss Govas's and Yiannias's claims with prejudice.
 
 
 20
 AFFIRM.