Nellie ALLEN, et al., Plaintiff,

v.

INTERSTATE BRANDS
CORPORATION, et
al., Defendant.

No. IP 96–1285–C–Y/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 16, 1999.

Elaine Parran Boyd, Nathaniel Lee, Lee & Clark, Indianapolis, IN, for plaintiffs.

Steven F. Pockrass, Wayne O. Adams III, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, IN, for defendants.

J. Randall Coffey, Leonard Singer, Bioff Singer & Finucane, Kansas City, MO, for defendants.

*MEMORANDUM DECISION ON INTER-STATE BRANDS CORPORATION'S MOTION TO DISMISS*

YOUNG, District Judge.

### I. Introduction

This matter is before the court on defendant Interstate Brands Corporation's ("IBC")[1] motion to dismiss which was filed on December 9, 1998. No response was filed by the plaintiffs.[2] A hearing on the motion was held on January 19, 1999. The court having considered all the evidence, including affidavits, depositions and other supporting documentation, now GRANTS defendant's motion to dismiss.

### II. Statement of Jurisdiction

The court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### III. Standard of Review, Findings of Fact and Conclusions of Law Regarding IBC's Motion to Dismiss Pursuant to Rules 37 and 41.

IBC's motion to dismiss was triggered by Ms. Boyd's failure to comply with another court order, this time regarding the defendant's second set of interrogatories. IBC bases its motion to dismiss on Federal Rules of Civil Procedure Rules 37 and 41.

Rule 37 provides in pertinent part:

If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
\*\*\*
(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

Fed.R.Civ.P. 37(b)(2)(C). Simply stated, Rule 37 allows a court to dismiss the case

against the party who does not comply with the discovery rules and/or orders.

■ Rule 41 provides in pertinent part:

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, the defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule ... operates as an adjudication upon the merits.

Fed.R.Civ.P. 41(b). Rule 41 differs from Rule 37 in that the former applies to court orders generally and/or the failure to prosecute; the latter applies only to the failure to comply with the discovery rules or discovery orders directed by the court. *See Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir.1992).

■ A dismissal under Rule 37 requires both a failure to comply with a discovery order and a showing of willfulness, bad faith or fault. *Ladien v. Astrachan*, 128 F.3d 1051, 1056 n. 5 (7th Cir.1997) (*citing Patterson v. Coca–Cola Bottling Co.*, 852 F.2d 280, 285 (7th Cir.1988)). Rule 41 on the other hand requires clear record of delay, contumacious conduct, or prior failed sanctions. *Roland v. Salem Contract Carriers, Inc.*, 811 F.2d 1175, 1177 (7th Cir.1987). Both Rules allow "a district court to impose sanctions, including dismissal, upon a party for that party's 'persistent failure to comply with discovery and scheduling orders.'" *Astrachan*, 128 F.3d at 1056 (*quoting Patterson*, 852 F.2d at 285).

■ Dismissal is a harsh remedy. *Astrachan*, 128 F.3d at 1057. However, dismissal may be "essential to the district courts' ability to manage effectively their heavy caseloads and thus protect the interests of all litigants." *Roland*, 811 F.2d at 1177–78. "[A] district court's power to dismiss a case 'serve[s] not only to protect defendants but also to aid courts in keeping administrative control over their own dockets

---

**1.** Formerly known as Continental Baking Company and Interstate Bakeries Corporation.

**2.** Plaintiffs are represented by Ms. Elaine Parran Boyd ("Ms. Boyd") whose conduct is at the heart of the matter presently before the court. Ms.

Boyd filed a response on February 4, 1999, subsequent to the hearing on the matter, asking this court to grant leave to file an untimely response to defendant's motion to dismiss. That request is discussed *infra*, part IV.

and to deter other litigants from engaging in ... dilatory behavior.'" *Astrachan,* 128 F.3d at 1056–1057 (*quoting Patterson,* 852 F.2d at 285).

The obvious concern when the court utilizes dismissal as a sanction is for the "faultless" plaintiff who may suffer because of his or her attorney's actions. This concern has been recognized by other courts and it does not go without notice in this case.[3] While most of the alleged rule violations in this matter are directed towards Ms. Boyd, nonetheless there is some evidence that the plaintiffs themselves have added to the alleged violations.

The Seventh Circuit laid a foundation on what factors a court should consider when addressing a motion to dismiss under Rule 41(b). *See Ball v. City of Chicago,* 2 F.3d 752, 759–60 (7th Cir.1993). While the court addressed these factors under a Rule 41(b) analysis, its utilization is equally applicable under Rule 37. The Ball court stated that the following factors should be used:

1. The frequency and magnitude of the plaintiff's failures to comply with deadlines;

2. The apportionment of responsibility for those failures between the plaintiffs and their counsel, and therefore the appropriateness of sanctioning the plaintiff's lawyer rather than the plaintiff for this conduct;

3. The effect of the failures on the court's calendar, and the judge's time to the prejudice of other litigants;

4. The prejudice to the defendants, if any, from the opposing counsel's conduct;

5. The likelihood of success on the merits of the suit; and

6. The effect of the social objectives this type of suit was designed to protect.

*Ball,* 2 F.3d at 759–60. Application of these factors to the case at bar justifies dismissal.

### A. The frequency and magnitude of the plaintiff's failures to comply with deadlines.

The frequency and magnitude of the plaintiffs' failures to comply with deadlines is a factor that the court gives great weight in its decision to dismiss this cause of action. The type of conduct under this factor tends to show the indifferent, disrespectful, and insolent attitude an attorney has regarding court orders and the Rules of Civil Procedure. Without rules, there is no civility. Without enforcement, the rules are worthless.

From the beginning of this lawsuit, Ms. Boyd has caused delay after delay. Additionally, "motions for time" were repeatedly asked for by the plaintiffs and granted by the court. Eventually, Magistrate Judge Shields was prompted to issue an Order to show cause as to why each Plaintiff should not be dismissed. (*See* Docket Nos. 55–75). The relevant portion of that show cause order provides as follows:

> On May 2, 1997, after a hearing requested by Defendants because of Plaintiffs' failure to respond to discovery requests, the court entered an Order directing Plaintiffs to provide Defendants with documents (or to confirm that there were no documents) responsive to six document requests contained in Defendants' Request

---

**3.** In *Astrachan,* the court noted that it may have been more reluctant to impose this sanction if the evidence showed that the plaintiff's attorney was the sole contributor of the conduct that necessitated dismissal. *Astrachan,* 128 F.3d at 1057 n. 6. However, in *Roland,* the court noted that a court's power of dismissal would be worthless if it could not hold the litigant responsible for the acts of his or her attorney where those acts meet the requirements of Rule 37 (willfulness, bad faith or fault) and Rule 41 (clear record of delay, contumacious conduct or prior failed sanctions)—even though the plaintiffs might otherwise have a meritorious claim. *Roland,* 811 F.2d at 1179. Additionally, the United States Supreme Court has held that clients should be aware of their cases and of their attorney's practices. *See Link v. Wabash Railroad Co.,* 370 U.S. 626, 634, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Id.* (*quoting Smith v. Ayer,* 101 U.S. 320, 326, 25 L.Ed. 955 (1879))).

for Production of Documents, which had been served on Plaintiffs on November 1, 1997 [sic]. In addition, the Court ordered that Plaintiffs were to respond to Defendants' First Interrogatories to Plaintiffs, which were served on April 14, 1997, and were to provide signed medical release forms previously provided to Plaintiffs by Defendants, on or before May 16, 1997.

On June 4, 1997, counsel for Defendants again requested a hearing with the Court, indicating that Defendants were concerned regarding their ability to conduct the depositions which the Court, in its May 2, 1997 Order, required to be taken during the week of June 9, 1997. Defendants stated that they probably would not be able to take the depositions due to Plaintiffs' failure to provide discovery ordered by the Court in the May 2, 1997 Order. The Court reviewed Plaintiffs' interrogatory answers and finds that the answers provided are inadequate and incomplete, and that a majority of the Plaintiffs have not even responded. In addition, Plaintiffs' counsel admitted during the telephone conference that, as of June 5, 1997, Plaintiffs had not complied fully with the terms of the Court's May 2, 1997 Order, either because of failure to provide documents and interrogatory answers at all, or because of the provision of inadequate and incomplete responses to the discovery that was the subject of that Order.

Consequently, the Court now hereby ORDERS that:

1. Plaintiff Deborah Barnett[4] shall appear and show good cause on or before June 16, 19997 at 8:00 am as to why the Court should not dismiss Plaintiff's claims in this matter pursuant to Rule 37(b) of the Federal Rules of Civil Procedure. Plaintiff Deborah Barnett shall file a written response with the Court on or before June 12, 1997, explaining Plaintiff's failure to comply with this Court's Order of May 2, 1997, setting forth any reasons why Plaintiff's claims should not be dismissed;

2. To the extent that before June 16, 1997, Plaintiff Deborah Barnett has provided complete, responsive answers to Defendant's First Interrogatories and has produced all documents as required by the Federal Rules of Civil Procedure and as ordered by this Court on May 2, 1997, the Court may, but is not required to consider the provisions of responses and documents by Plaintiff Deborah Barnett in determining the appropriate disposition of this Show Cause Order;

3. Defendants Shall have until June 23, 1997 to file a written reply to any submission by Plaintiff in response to this show cause order.

\* \* \* \* \* \*

(Order to Show Cause, June 10, 1997, Docket No. 55).

Ms. Boyd stated at the January 19, 1999, hearing on the motion to dismiss that her efforts in the case **prior** to the show cause order were less than forthright. This court agrees. However, Ms. Boyd argues that since the show cause order was issued in June 1997, she has diligently complied with court orders and discovery requests and therefore dismissal is not warranted. An examination of the record since the June 10, 1997 order leads this court to the conclusion that her argument is less than candid.

Plaintiffs' written response to the order to show cause was submitted on June 13, 1997.[5] This response did not comply with the court's order. Specifically, Plaintiffs responded collectively through their attorney, rather than individually as directed by the court. Further, Plaintiffs' response failed to provide a separate and particular explanation as to the reason why any plaintiff failed to comply with the court's May 2, 1997 order.

IBC filed their written response to the court's order to show cause on June 23, 1997. On July 1, 1997, Ms. Boyd asked for and was granted an extension of time to reply to IBC's written response. On July 14, 1997, when the reply was due, Ms. Boyd again asked for and was granted an extension up to and including August 14, 1997, when the reply was finally filed.

---

4. Each show cause order named a particular plaintiff. Each order was identical. *See* Docket Nos. 55–75.

5. The show cause order required a written response by no later than June 12, 1997. However, the court granted a one day extension requested by the plaintiffs.

Further, on July 14, 1997, plaintiffs filed a motion for class certification. After an extension of time to respond was granted, IBC filed a brief in opposition to the motion for certification on August 15, 1997. On August 27, 1997, Ms. Boyd filed a motion for extension of time to reply to IBC's brief in opposition. The court granted an extension up to and including September 15, 1997. On September 15, 1997, Ms. Boyd asked for another extension. Again the court indulged the plaintiffs' request and granted an extension up to and including October 15, 1997. On October 15, 1997, Ms. Boyd filed yet another motion for extension of time. Again the court granted plaintiffs' request up to and including November 15, 1997. Plaintiffs finally replied to defendants brief in opposition on November 26, 1997. The court overruled plaintiffs' motion for class certification on December 4, 1997.

Meanwhile, on August 11, 1997, plaintiffs filed a motion to extend time to amend their complaint.[6] Notwithstanding IBC's objections, the plaintiffs' were given an extension up to and including September 15, 1997 to file the amended complaint. On September 15, 1997, Ms. Boyd filed another motion for extension of time to amend. The court granted the request up to and including October 15, 1997. Once the October 15, 1997, deadline arrived, Ms. Boyd filed yet another motion for extension of time. Once again, and over defendant's objections, the motion was granted up to and including November 15, 1997. Plaintiff's (second) amended complaint was filed on November 17, 1997.

The order to show cause focused primarily on plaintiffs repeated failures to respond to discovery requests. Orders to show cause are not common place, yet they are not rare. In June 1997, the court's previously indulging patience had worn thin and a show cause order was warranted. At this point, one would think that an attorney would respond to deadlines and court orders. A request for an extension, even after a show cause order had been issued, may be justified every now and then. However, the plaintiffs, through Ms. Boyd, filed requests for extensions of time to every pleading filed. The patient court granted all of those requests. It is ironic that it took Ms. Boyd and the plaintiffs nearly 5 months to file their reply to IBC's show cause response.

Further, plaintiffs' second amended complaint omitted four individuals who were originally named as plaintiffs. On November 26, 1997, IBC filed a motion to dismiss those four plaintiffs and a supporting brief.[7] Its hard to believe, but the plaintiffs filed a motion for extension of time in which to respond to IBC's motion to dismiss. The court extended plaintiffs' response time up to and including January 11, 1998. Its hard to believe, but on January 12, 1998, a day after plaintiffs' response was due, Ms. Boyd filed another motion for extension of time until January 16, 1998. The court obliged, and on January 16, 1998, plaintiffs filed their response. The motion to dismiss the four plaintiffs was granted with prejudice on April 22, 1998.

In November 1997, the plaintiffs filed a motion to compel discovery alleging IBC's interrogatory answers were not complete, and that requested documents were not turned over.[8] In December, the court held

6. August 11, 1997, was the deadline for filing amendments to the complaint as set forth in the February 21, 1997, case management plan tendered to the court by the plaintiffs themselves. Plaintiffs filed their first amended complaint in April 1997.

7. On May 2, 1997, the court had ordered the plaintiffs to file a stipulation of dismissal for each plaintiff to be dismissed under Rule 41(a) by May 31, 1997. Instead of filing that stipulation of dismissal, plaintiff just omitted these four individual names on the subsequent amended complaint. Additionally, pursuant to that May 2, 1997, order, the plaintiffs filed an untimely motion to dismiss two other defendants without prejudice on June 3, 1997 instead of a stipulation of dismissal as ordered by the court. The court granted that motion with prejudice.

8. On November 4, 1997, defendants wrote the plaintiffs a letter regarding plaintiffs document request. Mr. Coffee, defendant's counsel, stated:

I am willing to discuss with you any of our responses that you think are not well taken, as well as any part of our production that you believe is not complete. If you will identify for me any personnel files that you believe are "partial," I will be happy to verify for you that we have produced Defendants' complete files or to produce anything that we may have missed.

the motion under advisement since the plaintiffs did not attempt to confer with IBC about the discovery issues prior to filing a motion to compel as required under Local Rule 37.1. Subsequent to the court's ruling, it was IBC who contacted the plaintiffs with another letter stating:

> We will be pleased to discuss any specific areas of disagreement that you may still have in regard to the documents we have produced to you. I believe that the additional documents which you picked up the day you filed your motion may have resolved many of your concerns. Nonetheless, if you have any remaining issues you would like to discuss, please let me know and we will arrange a mutually agreeable time to do so.

(December 29, 1997 Letter from Mr. Coffee to Ms. Boyd). In September 1998, the plaintiffs filed a renewed motion to compel discovery. Again the court found that Ms. Boyd failed to comply with Local Rule 37.1 and denied the motion to compel.

Further, in October and November 1997, Magistrate Judge Shields spent several hours with the parties trying to work out a deposition schedule for late 1997 or early 1998. Ms. Boyd was unavailable for most of December 1997, all of January and most of February 1998. Depositions were scheduled for the week of February 23, March 9, March 23, April 20 and April 27.[9] On February 19, 1998, IBC filed an emergency motion to enforce the court's prior deposition schedule and set new dates certain for depositions.[10] The court ordered that if the depositions scheduled for the week of February 23 were not to take place, they were ordered to take place the week of April 6, 1998.

On February 23, 1998, the plaintiffs filed a motion for a protective order seeking to: 1). discontinue the deposition of Velma Lambert and 2). limit to "one standard day" each remaining plaintiff to be deposed. In the motion, the plaintiffs dispute the fact that specific dates were set in February, March, and April. However, Ms. Boyd acknowledged that the depositions were to resume in February. This court will not discuss the motion for a protective order other than to say that the motion was denied on March 6, 1998. Additionally, the court ordered Velma Lambert to submit to a mental examination.[11]

To clarify any confusion surrounding the deposition schedule, Magistrate Judge Shields, by written order dated March 6, 1998, confirmed the deposition schedule.[12] On March 7, 1998, Mr. Coffee sent a letter by

---

(Exhibit A, Defendants response to plaintiffs' motion to compel). Instead of contacting the defendants, the plaintiffs filed the motion to compel.

9. Some depositions were taken in early December 1997. However, most of those were in a related case *Noe v. Interstate Brand Corporation.* The same counsel represented the respective parties in that case as they do for the parties in this matter.

10. Ms. Boyd's father passed away and she was unavailable to do the depositions. Mr. Coffee asked Mr. Lee, a partner in the firm where Ms. Boyd works and who had himself previously represented that he was lead counsel, whether he was able to do the depositions. He stated he could not. He also represented that it would be imprudent for him to block out an April 6, 1998 deposition date for Ms. Boyd prior to her return.

11. In the court's March 9, 1998 order, the plaintiffs were granted leave to file a motion to reconsider and supporting brief on the issue of a protective order regarding the mental examination of Velma Lambert. Ultimately, the motion was denied.

12. The March 6 order is as follows:

The Magistrate Judge is advised by the parties' filings in this cause that a difference of opinion exists as to the import of telephone discovery conferences held with parties' counsel and the Magistrate Judge on October 30, 1997, November 4, 1997, and December 10, 1997, during which a deposition schedule was agreed upon by the parties at the court's direction. That conference resolved the deposition schedule dispute without the necessity of further action. However, apparently plaintiffs' counsel intends not to honor the agreement and, therefore, the court reduces the agreement of October 30, 1997, November 4, 1997, and December 10, 1997, to order form in order to avoid needless confusion on the part of plaintiffs' counsel. Therefore, it is ORDERED that depositions in these causes shall proceed as follows:
Noe depositions: November 17–20, 1997
Allen depositions: November 21, 24, 25, week of December 8, 1997
Other depositions: Weeks of February 23, 1998; March 9, 1998; April 6, 1998; April 20, 1998; and April 27, 1998, with plaintiffs and defendants alternating plaintiffs' noticed depositions and defendants' noticed depositions as follows[:] one plaintiffs' noticed deposition for every four defendants' noticed depositions.
(Order dated March 6, 1998. Docket No. 164).

fax to Mr. Lee and Ms. Boyd confirming the deposition schedule for the upcoming week. Ms. Boyd faxed a reply on March 8, 1998, at 5:24 p.m.[13] She indicated that the only available dates for that week was March 10, 12 and 13. Additionally, she indicated that she was available on March 23, 25, and 26, but not during the month of April.[14]

A status conference was held on March 9, 1998 and the court issued yet another order. This order again reflects Ms. Boyd's failure to heed to the deposition schedule. The essence of the order epitomizes why this motion to dismiss is before the court. The March 9 order reads as follows:

> The parties appeared, by counsel, this date before the Magistrate Judge for a status conference, which was necessitated by plaintiffs' counsel's failure to adhere to the deposition schedule previously established during several telephonic conference calls between counsel and the magistrate judge. The following revised, and final, deposition schedule was established this date. Plaintiffs' counsel is advised that failure to attend and/or produce plaintiffs as deponents pursuant to the following schedule will result in the magistrate judge recommending the imposition of sanctions, including, but not limited to, monetary fines, costs, and dismissal of the plaintiffs' case. \*\*\*

(Order dated March 9, 1998, Docket No. 166).

This order is highly germane for several reasons. First, it reflects the indifferent attitude Ms. Boyd has with regard to court orders. Second, it reflects the increasingly frustrated and diminished patience of the court. Third, it reflects the frequency and magnitude of plaintiffs' behavior. Finally, it evidences that the plaintiffs have been warned of potential dismissal.[15]

On May 5, 1998, Ms. Boyd filed a Motion to Quash Notice of Deposition of Patti Smith. The reason for the request was "[t]hat Plain-

tiffs' counsel has attempted to contact Patti Smith on numerous occasions; to date, we have not received a response." (Motion to quash ¶ 2, Docket No. 186). IBC filed a response and a counter motion seeking dismissal of Patti Smith's claims. In resolving the motion and counter motion, the court ordered, in a marginal notation, "Smith to provide complete, signed and sworn answers to all five interrogatories that were served on Smith thirteen months ago, that the Court further orders Smith to appear for a deposition on May 28, 1998, and that the Court dismiss Smith's claims with prejudice should she fail to comply with these orders." (Marginal Notation on Defendant's response to motion to quash, Docket No. 170). The court further ordered that the answer to the interrogatories be filed by May 19, 1998. The record indicates that the answers were never filed. By noon on May 21, 1998, IBC had still not been served with the answers and therefore moved to dismiss Patti Smith.

Further, on July 23, 1998, the court issued another entry scheduling more depositions. Plaintiff's counsel advised the court that she was unavailable for depositions during the months of October, November, and December 1998, as well as January and the first week of February 1999. The court worked with her schedule. The court also ordered plaintiffs to file a statement of contentions, and a final witness and exhibit list, on or before October 5, 1998. On October 19, 1998, the plaintiffs filed their final witness and exhibit list, however, they neglected to file a statement of final contentions until November 2, 1998, almost a month late.

Further, IBC served a second set of interrogatories on the plaintiffs on July 1, 1998. The answers to these interrogatories were due on July 31, 1998. Pursuant to local rule 37.1, defense counsel contacted plaintiffs' counsel on August 17, 1998, in order to re-

---

13. Defendants had already made their way from Kansas City to Indianapolis by the time Ms. Boyd faxed her letter.

14. Ms. Boyd's actions prompted a motion for fees and expenses incurred by the defendants in her failure to attend the scheduled March 9, 1998 deposition. The court has yet to rule on that pending motion. It hereby DENIES that motion since the sanction of dismissal is utilized in this matter.

15. Previously, each individual plaintiff had been warned by their attorney herself:

> Counsel for the plaintiffs has issued a clear warning to the Plaintiffs by certified mail who have not complied regarding the court's intent to dismiss their case if they fail to provide the requested documents and answers to interrogatories on or before June 16, 1997.

(Plaintiffs' response to court's show cause order, ¶ 15).

solve why the answers had not been returned. The parties came to an agreement and extended the time to answer up to and including November 1, 1998.[16] This agreement was confirmed by letter dated August 24, 1998. (Letter from Mr. Coffee to Ms. Boyd, August 24, 1998, attached as Exhibit B to defendant's motion to compel, Docket No. 201.) On October 13, 1998, IBC realized that the terms of the August agreement were not going to be complied with and therefore contacted plaintiffs and requested the interrogatories be returned completed by October 19, 1998. A motion to compel was filed by the defendant on October 20, 1998.

Magistrate Judge Shields issued an order compelling plaintiffs to answer the second set of interrogatories by December 1, 1998. Plaintiffs timely returned the second set of interrogatories. However, instead of providing substantive answers, the plaintiffs only responded with blanketed objections to each question. Along with those objections, each plaintiff filed a sworn affidavit stating that he or she had read the foregoing answers to the

defendants' second set of interrogatories and that the information (the objections) contained in the answers was true and complete.[17] IBC contacted plaintiffs, pursuant to local Rule 37.1, regarding their failure to provide substantive answers. IBC also informed plaintiffs that a motion to dismiss would be filed unless those substantive answers were provided. Plaintiffs indicated that they were going to rely on their objections and were not going to answer the questions.

Further, IBC filed a motion to compel the production of tape recordings, with a supporting brief, on November 2, 1998. The court granted the motion on November 24, 1998[18] and further directed plaintiffs to provide updated medical authorizations.

In September 1998, the plaintiffs filed a motion for injunctive relief. A similar motion was denied in January 1997. Plaintiffs' argument for injunctive relief is that an IBC employee continued to harass and endanger fellow employees who may or may not be involved with this lawsuit.[19] Regarding the

---

16. The defendant gave the plaintiffs this extension provided four other criteria were met. Those criteria were related to defendant's prior discovery requests that were long over due.

17. The court does not decide whether the individually named plaintiffs were wise in relying upon the advise of their attorney in filing their objections and affidavits. However, filing their affidavits and not "answering" the interrogatories as ordered by the court shows that the plaintiffs themselves, and not only their attorney, disregarded court orders. It also shows that plaintiffs' counsel was able to contact each individual plaintiff.

18. The request for the tape recordings had been made two years prior in a request for production. Ms. Boyd stated at the hearing that the tape recording was not turned over earlier because the plaintiff in control of the tape had moved and could not locate the tape. The irony in this is that on March 13, 1998, Ms. Boyd indicated in a letter to defense counsel that she had those tapes. The letter reads:

> With regard to your request concerning the tapes, if you would advise me of the third party commercial vendor that you intend to utilize, for copying purposes, we can deliver the tapes immediately and arrange to pick them up, after they have been duplicated. I regret, however, that it would not be possible for us to release the tapes to you personally.

(Boyd letter to Steven Pockrass, March 13, 1998, Exhibit 6 of Plaintiffs' notice of noncompliance). At the minimum, Ms. Boyd had access to the

tape at that time. The answering machine tape was turned over at the hearing on the motion to dismiss on January 19, 1999.

19. In her motion for an injunction, plaintiff recites allegations of threats and harassment that were supposedly committed by the defendant, most particularly by a supervisor named Randy Green. They alleged that Mr. Green: threatened to kill someone; threatened to kill himself; came in intoxicated one day; screamed at employees, following them around staring at them and frightening them in an intimidating manner, along with imposing unwarranted discipline on employees; pushed and shoved employees including [three individuals not named as plaintiffs]; sabotaged employee's machines in order to have them set up for termination; violated board of health regulations; caused employees to take medical leaves of absences; treated black employees with great disdain and bitter animosity; treated white employees who stood up for the black employees with the same disdain and animosity; failed to benefit from the special management classes the company enrolled him in; and requested and received the protection of upper management by threats.

Plaintiffs argue that as a result of these allegations, the company should be enjoined from: permitting Mr. Green to engage in the above mentioned conduct; and harassing, intimidating or unfairly disciplining employees who testify.

merits of the motion: 1) No case law or rules were cited in support of the motion; 2) plaintiffs failed to request exactly what type of injunctive relief they sought; and 3) they failed to specify any elements necessary to sustain injunctive relief.[20]

Finally, a third set of interrogatories were sent to certain individual plaintiffs on November 12, 1998. There was no response to those interrogatories. Instead, the plaintiffs again tried to thwart and delay IBC's discovery process by filing a motion to strike these interrogatories.[21] The court ordered that the responses be answered by January 22, 1999, with no extensions absent extraordinary circumstances. Guess what?, on January 22, 1999 at 4:36 p.m., Ms. Boyd filed for an extension.[22]

The frequency and magnitude of Ms. Boyd's actions, attributable to the plaintiffs, and in some instances the plaintiffs' own actions, were extensive, predictable and very serious. It is one strong factor this court has considered in dismissing this action.

### B. The apportionment of responsibility for those failures between the plaintiffs and their counsel, and therefore the appropriateness of sanctioning the plaintiff's lawyer rather than the plaintiff for this conduct.

Although the brunt of the plaintiffs' behavior lies on the shoulders of Ms. Boyd, (*See supra*, part III–A), the individual plaintiffs have nonetheless contributed to their demise. The failure to attend depositions and/or the last minute canceling of the depositions; the failure to forward addresses or otherwise keep in contact with their attorney; the blatant disregard of an order to answer interrogatories; failure to turn over discovery material; and stern warnings from both their attorney and this court[23] that their failures would lead to dismissal. These are just some of the instances that are attributed to the individual plaintiffs themselves.[24] The court cannot conclude that Ms. Boyd was solely at fault in this matter.

### C. The effect of the failures on the court's calendar, and the judge's time to the prejudice of other litigants.

While this factor should be given the least amount of consideration when considering

---

**20.** The court finds this motion to be without merit and frivolous. Since this court is imposing dismissal as a sanction, it hereby DENIES sanctions as requested by the defendants under this motion.

**21.** Plaintiff asserted that after the July 23, 1998 conference with Judge Shields, a September 28, 1998 deadline was set for all paper discovery. Judge Shield's July 23, 1998 Entry (Docket No. 192) clearly indicates that the deadline for all fact discovery was May 29, 1999.

**22.** Ms. Boyd indicated in her request for extension that her mother-in-law passed away on January 20, 1999. A death in the family is a serious matter that certainly amounts to extraordinary circumstances warranting an extension. This court sincerely extends its sympathies to Ms. Boyd and her family. However, plaintiffs were mailed the third set on November 12, 1998. Additionally, on January 11, 1999 Magistrate Judge Shields ordered them to be answered; thus giving plaintiffs more than a week to answer the interrogatories before this tragic event occurred.

**23.** The Seventh Circuit has opined that a district Judge "would be well advised to give lawyers an express warning before dismissing a case ..."

*Ball*, 2 F.3d at 756. *See also Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir.1998) ("The court should send out "due warning" to plaintiff's counsel prior to dismissing the case." *Id. quoting Ball*, 2 F.3d at 755). Ms. Boyd, and even the individual plaintiffs through Ms. Boyd, have been adequately warned that dismissal is a possible sanction for ignoring court orders and for their continuing practices of avoiding and delaying discovery.

**24.** To what extent the individual plaintiffs were following advise of counsel, this court does not need to decide. At some point, the individual plaintiff must take some accountability and responsibility for his or her attorney's decisions. It may not even matter what proportion the individual plaintiff bears with regard to the sanction imposed. The court may be able to impose this sanction even if that attorney was wholly responsible. *See supra* n. 3; *See also Daniels v. Brennan*, 887 F.2d 783, 788 (7th Cir.1989) ("the mistakes of counsel, who is the legal agent of his client, are chargeable to the client, no matter how 'unfair' this on occasion may seem ..." *Id.* (citations in original omitted)).

dismissal as a sanction, it is still an important factor. Each Federal District Court Judge carries a heavy docket, including the Magistrate Judges. There can be no doubt that Magistrate Judge Shields has put a tremendous amount of time, effort, and patience into this case which ultimately diminished and depleted the time and effort she could afford to other litigants on her very busy docket.

When a Judge has to spend considerable more time working on one case, not because of the complexity or volume of the case itself, but because one attorney chooses to follow his or her own course of conduct with regard to court orders, the time taken away from other matters must have an unfair and prejudicial effect on other litigants on the Judge's docket who timely follow the rules and who conscientiously follow the court's orders. This happened here. Not only did Judge Shields spend numerous hours on the phone coordinating deposition schedules in October, November, and December 1997, she had to prepare two written orders—one on March 6, 1998, the other on March 9, 1998—to reiterate those schedule dates which Ms. Boyd failed to adhere to. (*See supra* part IV–A and n. 12). The frequency and magnitude of Ms. Boyd's actions, and the actions of the individual plaintiffs, have certainly had an adverse effect on the court's schedule as well as causing prejudice to other litigants.

### D. The prejudice to the defendants, if any, from the opposing counsel's conduct.

There are legitimate interests in protecting a defendant through the sanction of dismissal when there is a failure to prosecute, either by not complying with discovery rules or disobeying court orders. The court cannot presume that a defendant is liable or committed some civil wrong just because a lawsuit has been filed. He is entitled to his day in court along with the plaintiff. When a plaintiff takes obstructive and dilatory measures in preventing a defendant the opportunity to defend himself, sanctions are appropriate.

Certain costs created by the non-complying attorney's actions can be shifted back to that attorney through monetary sanctions. However, there are costs to the defendant that cannot be measured through monetary value.

"A protracted lawsuit ties up the defendant's time, and prolongs the uncertainty and anxiety that are often the principal costs of being sued." *Ball*, 2 F.3d at 759. Although we are dealing with a corporate entity here, and not necessarily a human being, all defendants can be affected and should be afforded the same protections. Moreover, delays may make the arduous task of mounting a defense even greater. *See id.* These costs cannot be shifted back to the culpable party with a monetary sanction, but must rest with the non-faulting defendant. To say that the defendants in this case have been prejudiced by the indifferent actions of the plaintiffs and their attorney would be a gross understatement. (*See supra* Part III–A).

### E. The likelihood of success on the merits of the suit.

To what extent this is given weight must obviously depend on the circumstances surrounding the case itself. When one party has circumvented or in some way or another prevented the discovery process, the merits of the suit are difficult to assess. It would not be uncommon for these type of delay tactics to occur for the sole purpose of forcing settlement on the frustrated defendant. *See Ball*, 2 F.3d at 759. The court has no concrete reason to believe that such a practice was being employed here. However, it would not be a far stretch for the court to conclude that the plaintiffs' repeated delays is indicative that no valid cause of action exists.

The court should at least give the benefit of the doubt to the plaintiff when assessing whether there is merit to the suit. Fully addressing the merits of the suit when contemplating dismissal as a sanction can be detrimental for two reasons. First, since discovery and court orders have not been complied with, there is much less evidence in which to make a proper assessment. Second, an indication that merit is lacking might deter a party from seeking any potential repercussions against his or her attorney. A proper analysis is to give the plaintiffs the benefit of the doubt and weigh it against the

other factors to be considered. Here, even if the case had merit, dismissal is still the proper sanction.

### F. The effect of the social objectives this type of suit was designed to protect.

Race discrimination, along with the other types of employment discrimination, is a serious problem. From a social standpoint, these civil rights suits have two objectives: 1) deterrence; and 2) compensation. *Ball,* 2 F.3d at 757. The remedial goal of the suit is to financially punish those persons and institutions engaging in the discriminatory acts or discriminatory practices to the extent that it becomes a deterrent against repeated conduct by the particular entity or by any other entity engaging in that type of conduct. However, when a case is dismissed for a reason other than its merits, the deterrent effect is obliterated. Compensation is designed as a mechanism that pays an injured party what it had lost because of the opposing party's conduct. The compensatory repercussions of a dismissal are minimized by the legal malpractice suit an aggrieved party may have against his or her own attorney.[25]

The *Ball* court considered the effect of the social objectives and the probable merits of the suit closely related. *Ball,* 2 F.3d at 760. This court does too. If there is merit to the suit, dismissal on other grounds eradicates the social objectives. Conversely, if the suit lacks merit, dismissal or a finding of no liability would have been inevitable. However, there are social objectives in dismissing a case too. First, it provides a person "greater incentive to use due care in hiring and monitoring a lawyer." *Ball,* 2 F.3d at 758 (*citing Kagan v. Caterpillar Tractor Co.,* 795 F.2d 601, 609 (7th Cir.1986)). Second, since dismissal of this type may trigger a malpractice suit or disciplinary proceedings, it acts as a deterrent that provides incentive for an attorney to use due care and diligence in litigating the claims of his or her clients.

With this said, all cases have some social objectives. When a case is filed, one party is seeking to be compensated for a wrong committed against them, to stop a civil wrong from continuing, or to punish or to deter the wrong doer's actions. These factors create the social objectives of an underlying lawsuit. That is why dismissal is such a harsh remedy. However, not utilizing this sanction is even more harsh on a defendant when a situation arises that merits the sanction. The court may be left without recourse if it could not use dismissal as a prophylactic device to guard against the indifferent attitude an attorney has with respect to discovery and court orders, regardless of the merits and social objectives of the claim.

### IV. Plaintiffs' Motion Subsequent to Oral Argument

On February 4, 1999, two weeks after the hearing on this motion to dismiss, plaintiffs filed two motions: 1) motion for leave to file supplemental argument and/or an untimely response to IBC's motion to dismiss; and 2) plaintiffs' belated motion to issue objections to interrogatories. The actual filing of these motions further illustrates Ms. Boyd's impassive manner regarding court orders and filing deadlines.

Pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, if a request for enlargement of time is made prior to the expiration of the due date, the court may, with good cause shown, enlarge the time. If the request is made after the expiration of the prescribed period, the moving party must show that the failure to act was the result of excusable neglect.

### A. Motion for leave to file supplemental argument and/or an untimely response to defendant's motion to dismiss.

■ Ms. Boyd had plenty of time in which to respond to defendants December 9, 1998,

---

**25.** The court recognizes the difficulty a party may have in a malpractice suit. Not only does the aggrieved party need to prove that the attorney was negligent in his or her handling the case, he or she must prove that the underlying civil rights action had merit. Additionally, the delay in compensation is much longer when a party must seek his or her recovery in a malpractice claim. However, court's must consider this in light of the delay a plaintiff's own action has caused. Finally, the *Ball* court was concerned that an aggrieved party may not even know that they have a possible malpractice claim since they might not know why their case was dismissed. *Ball,* 2 F.3d at 757. This concern is alleviated in the instant case. *See infra* part V—Conclusion.

motion to dismiss. In fact, the hearing on the motion was scheduled for January 19, 1999. Instead of filing a timely response, Ms. Boyd decided to argue her position to the court. Two weeks later, Ms. Boyd filed this motion for leave to file an untimely response. The court is dumbfounded at the audacity possessed by Ms. Boyd. It is not uncommon for an attorney to file such a request. However, it nonetheless stuns the court that the very same practices defendant argued in their motion to dismiss continue while the court is deciding its ruling.

Ms. Boyd has failed to show that her failure to act was the result of excusable neglect. While Ms. Boyd does indicate that she was experiencing very difficult personal circumstances which culminated in her mother-in-law's death one day after the hearing, she still had over a month to prepare a response prior to the hearing. The court has read plaintiffs' arguments in their untimely response brief. Even if this court were to allow plaintiffs' untimely response to be filed, the court would still come to the same conclusion regarding the motion to dismiss. *See Cook v. Winfrey*, 141 F.3d 322, 326–27 (7th Cir.1998). Therefore, the court DENIES plaintiffs' motion for leave to file an untimely response.

### B. Plaintiffs' belated motion to issue objections to interrogatories.

 This exemplifies yet again plaintiffs' failure to follow a court directive. In November 1998, Judge Shields issued an order directing plaintiffs to answer the interrogatories no later than December 1, 1998. Plaintiffs were served these interrogatories on or about July 1, 1998. The due date for those answers came and went. IBC contacted the plaintiffs regarding the answers. The plaintiffs were given until November 1, 1998 to answer the interrogatories. *See supra*, part III–A. Needless to say, no answers were returned by that date, nor were any objections filed to those questions. Furthermore, even though the questions may have argumentatively asked for detailed answers, there were only three questions. Plaintiffs had over four months in which to file objections. Instead, when the court granted a motion to compel and ordered the plaintiffs to answer, only then did the plaintiffs take the time to file blanketed objections to the interrogatories. Magistrate Judge Shields issued an order and it was once again disregarded. Those interrogatories still have not been answered. However, those interrogatories need not be answered since this case is dismissed. Plaintiffs' belated motion to issue objections to interrogatories is DENIED.

### V. The Withdrawal of Ms. Boyd

Ms. Boyd indicated in both the hearing held on January 19, 1999, and in her motion for extension of time for the third set of interrogatories, that she would be withdrawing from the case. Ms. Boyd has not withdrawn at this point. Furthermore, neither her indication that she will withdraw nor her actual withdrawal would have a legal effect on the court's decision.

### VI. Conclusion

The court finds that pursuant to both Fed. R.Civ.P. 41(b) and Fed.R.Civ.P. 37(b)(2)(C), this action shall be dismissed. Conduct attributable to both Ms. Boyd and the individual plaintiffs evidences a willful and bad faith pattern of disregarding discovery orders. Furthermore, plaintiffs' actions demonstrate a clear record of delay and contumacious conduct.

It is HEREBY ORDERED, ADJUDGED AND DECREED that this case is dismissed, with prejudice. It is further ordered that Ms. Boyd provide a copy of this entry to all of the individual plaintiffs; and that Ms. Boyd submit proof to this court no later than April 30, 1999, of her compliance with this order, or explain to the court why she should not be held in contempt. Other than Ms. Boyd's compliance with this entry, this is a final judgment.